Louis Pechman
Gregory Slotnick
Pechman Law Group PLLC
488 Madison Avenue - 17th Floor
New York, New York 10022
(212) 583-9500
pechman@pechmanlaw.com
slotnick@pechmanlaw.com
*Attorneys for Plaintiffs*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------------X

| | |
|---|---|
| ANDJELA STEFANOVIC, UROS DUKIC, and BOJANA NOVAKOVIC, : | |
| Plaintiffs, : | **18 Civ. 2093** |
| -against- : | **COMPLAINT** |
| OLD HEIDELBERG CORP. d/b/a HEIDELBERG RESTAURANT and EVA MATISCHAK, : | |
| Defendants. : | |

-------------------------------------------------------------------X

Plaintiffs Andjela Stefanovic ("Stefanovic"), Uros Dukic ("Dukic"), and Bojana Novakovic ("Novakovic") (collectively, "Plaintiffs"), by their attorneys Pechman Law Group PLLC, complaining of Defendants Old Heidelberg Corp. d/b/a Heidelberg Restaurant ("Heidelberg") and Eva Matischak ("Matischak") (collectively, "Defendants"), allege:

## NATURE OF THE ACTION

1.      Heidelberg Restaurant employed Plaintiffs Stefanovic and Dukic as servers and bartenders, and Plaintiff Novakovic as a server, bartender, host, and "manager" at Heidelberg Restaurant, but did not compensate them at the statutory minimum or overtime wage rates, and failed to furnish them with statutorily-required wage notices and accurate weekly wage statements.

2.      This action is brought to recover unpaid minimum and overtime wages pursuant to the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq*. ("FLSA") and New York Labor Law §§ 190, 615 *et seq*. ("NYLL"), unpaid spread-of-hours pay and uniform maintenance costs pursuant to the NYLL, statutory damages for violations of the NYLL's Wage Theft Prevention Act ("WTPA"), liquidated damages, pre- and post-judgment interest, and attorneys' fees and costs pursuant to the FLSA and NYLL.

## JURISDICTION

3.      This Court has subject matter jurisdiction of this case pursuant to 29 U.S.C. § 216(b) and 28 U.S.C. §§ 1331 and 1337, and has supplemental jurisdiction over Plaintiffs' claims under the NYLL pursuant to 28 U.S.C. § 1367.

## VENUE

4.      Venue is proper in the Southern District of New York under 28 U.S.C. § 1391, because all events relevant to this action occurred at Heidelberg Restaurant, located and operated by Defendants at 1648 Second Avenue, New York, New York 10028, which is in the Southern District of New York.

## THE PARTIES

**Plaintiffs**

5.      Stefanovic resides in Queens, New York.

6.      Defendants employed Stefanovic as a server and bartender from in or about November 2016 through November 10, 2017.

7.      Dukic resides in Aspen, Colorado.

8.      Defendants employed Dukic as a server and bartender from in or about August 2016 through October 27, 2017.

9.      Novakovic resides in Los Angeles, California.

10.     Defendants employed Novakovic as a server, bartender, and host from in or about May 2011 through in or about mid-2014, and from in or about September 2016 through December 2, 2017.  During the period she worked in 2014, Novakovic also worked under the title of "manager" at Heidelberg.

**Defendants**

11.     Old Heidelberg Corp. is a New York corporation that owns and operates Heidelberg Restaurant.

12.     According to its website, "Heidelberg is one of the oldest family-run German restaurants in the United States, dating back over one hundred years."

13.     Old Heidelberg Corp. has employees engaged in commerce or in the production of goods for commerce and handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person.

14.     Within the three years prior to the filing of this Complaint, Old Heidelberg Corp. had an annual gross volume of sales in excess of $500,000.

15.     Defendant Eva Matischak is the owner of Heidelberg.

16.     Throughout Plaintiffs' employment, Matischak made personnel decisions at Heidelberg, disciplined employees, hired and fired employees, set their wages, and otherwise controlled the terms and conditions of their employment.

17.     Throughout Plaintiffs' employment, Matischak made payroll decisions at Heidelberg, and retained time and wage records.

18.     Matischak remotely managed the day-to-day operations of Heidelberg, communicating all managerial decisions via telephone, including the hiring and firing of employees, employee scheduling, and payment of wages.

19.     When Novakovic worked under the title of "manager," Matischak called her constantly with directions as to decision-making at Heidelberg.  Novakovic was not

permitted to make day-to-day decisions, and did not have the authority to hire employees, fire employees, or set their wage rates.  Instead, Novakovic implemented Matischak's instructions.

20.     Throughout Plaintiffs' employment, Matischak exercised sufficient control over Heidelberg's operations to be considered Plaintiffs' employer under the FLSA and NYLL.

## FACTUAL ALLEGATIONS

21.     Heidelberg's kitchen is generally open to the public on Mondays and Tuesdays from 4:00 p.m. to 10:00 p.m., Wednesdays and Thursdays from 11:00 a.m. to 10:00 p.m., Fridays and Saturdays from 11:00 a.m. to 11:00 p.m., and Sundays from 11:00 a.m. to 10:00 p.m.

22.     Heidelberg's bar is generally open to the public on Mondays and Tuesdays from 4:00 p.m. to 12:00 a.m., Wednesdays and Thursdays from 11:00 a.m. to 12:00 a.m., Fridays and Saturdays from 11:00 a.m. to 1:00 a.m., and Sundays from 11:00 a.m. to 12:00 a.m.

23.     Defendants required Plaintiffs to spend at least two hours, and more than twenty percent of their workday, performing non-tipped "side work."

24.     A copy of the list of side work assigned to Plaintiffs by Defendants is attached hereto as Exhibit A.

25.     The non-tipped side work Plaintiffs performed when opening the bar included turning on overhead lights, lights under the bar, the stereo, and the TV; setting up the rubber mats; hooking cocktail utensils into the ice box; setting up the servers' ice box; arranging napkin and straw boxes; setting up fruit boxes, including cleaning the box and fruits if still useable, cutting new fruits, refilling the box and putting the box in the servers' corner; filling one bucket with red and white wine bottles; cleaning and

4

putting together the soda gun, cleaning and refilling the juice container for tomato juice and fresh orange juice; filling the bleach bucket; wiping and filling a sink with hot water and soap and another sink with cold water and sanitizer; bringing up one bin for dirty plates and another bin for empty bottles; putting the grids in place on the beer tap; cleaning the beer tower and brass; checking all the beer lines; tapping the beers; re-stocking the bar refrigerator and freezer with bottles of red and white wine, bottled beer, liquor and schnapps, and doing the same for the downstairs refrigerator and freezer; re-stocking juices, syrups, and cocktail ingredients, lemons, limes, cherries, olives, horseradish, celery, napkins, straws, plates, silverware, and towels; opening the front door, bringing a chalkboard sign with Heidelberg specials outside onto the sidewalk, checking the outside lights that brighten the Heidelberg sign, and, during the warmer months of the year, setting up the outside chairs and tables; and putting the keys on the old register.

26.     The non-tipped side work Plaintiffs performed when closing the bar included bringing in the sign from outside; checking the lights and outside area, and bringing in the seats, tables, and flowers from outside; emptying out the wine bucket and refrigerating the white wine; loading the dirty napkins into the laundry bin; storing the candles, napkin boxes, and coasters; physically bringing all the dirty dishes downstairs; filling an empty bin with all the rubber mats, bar utensils, beer tab grids, cutting boards, forks, and spoons from the fruit box, as well as the fruit box itself, and taking the bin downstairs; taking the empty alcohol bottles downstairs; locking the back kitchen door; wiping down the bar, flap, register, printer, speed racks, bottles, beer tower, and clean beer tabs; pouring hot water into the beer tabs to avoid clogging; breaking down the soda gun and soaking it with soda water; cleaning the refrigerator and freezer, including the doors and gaskets; cleaning the bar sinks, including the glass

5

washer; closing out the register and printing a server audit; putting the bar stools back up on the bar; and turning off the TV, stereo, and all the lights.

27.     According to Defendants' list of assigned side work, "whenever [they] have time," while workings as bartenders, Plaintiffs were also required to and did polish glasses with a napkin; wipe the bar, all surfaces, chairs, the bench, and the barrel; clean the beer tower, bar mirrors, and the soda gun; remove and dust bottles; dust and wipe shelves, clean all three ice bins, bar candies, the condiment dispensers, salt and pepper shakers, and menus; wipe the register and printer; organize and re-stock items, including plates and silverware; cut fruits, place them in plastic containers, and label with the date; clean, refill, and light new candles; add ice to the white wine bucket, and sort and arrange menus.

28.     The non-tipped side work Plaintiffs performed while working as servers at Heidelberg included setting up soap solution and clean rags for wiping down the tables in the dining room; wiping down all the tables, chairs, benches, window sills, side boards, and picture frames; cleaning and filling salt and pepper shakers; discarding the dead or dying flowers and spent candles; cleaning the water vases daily; cleaning the shelves, bread warmer, and coffee serving trays; stocking the server station with coffees, teas, sugar, candies, oil, vinegar, coffee filters, and to-go containers; cleaning the coffee machine, coffee filter tray, the burners and pots; setting up the server station by bringing bread up from the walk-in, a cutting knife, and ice bins for butter and milk; setting up the sanitizing bucket for service at every station; making sure the bus bin and glass racks were in place and that food service gloves were available at every station; checking and refilling chocolate mints in the back of the restaurant; wiping down all the menus and menu covers; polishing the water glasses and flatware; wiping down the computer before the shift; making sure linen hampers were in place and not overfilled,

removing and replacing downstairs if the bag was overfilled; cleaning all server trays in the server station; stocking all take-out containers, lids, bags, and utensils; stocking dollies, emptying and cleaning the dessert refrigerator; sanitizing all the server cutting boards; cleaning and refilling all condiment containers including ketchup, mustard, sour cream, and apple sauce; and maintaining sufficient stock of utensils, including small tongs for lemons, pastry bags for whipped cream, spoons for sour cream and horseradish, and a ladle for apple sauce.

29.    Stefanovic and Novakovic spent approximately two hours per shift performing non-tipped work in the mornings while setting up the restaurant and approximately another one-and-one-half hours per shift performing non-tipped side work in the evenings while closing the restaurant.

30.    When they worked the night shift and before they could close the restaurant and set the alarm, Plaintiffs were also required to remain at Heidelberg for approximately two additional hours while the dishwashers completed their own closing duties.

31.    Defendants did not provide Plaintiffs with notice of the tip credit provisions of the FLSA and the NYLL or their intent to apply a tip credit to their wages, and required Plaintiffs to engage in non-tipped "side work" for at least either two hours or twenty percent of their workday.

32.    For each of the Plaintiffs, Defendants would occasionally round down their hours and shave time off Plaintiffs' paystubs.

**Stefanovic's Hours and Pay**

33.    From approximately November 2016 through approximately January 2017, Stefanovic regularly worked a double shift on Monday as a bartender from approximately 9:30 a.m. to 12:00 a.m., a night shift on Tuesday as a bartender from

approximately 5:00 p.m. to 12:00 a.m., and a night shift on Friday as a server from approximately 4:00 p.m. to 12:30 a.m., totaling approximately thirty hours per week. Stefanovic regularly worked without receiving more than a fifteen-minute break for the entirety of her shift.

34.     From approximately February 2017 through November 10, 2017, Stefanovic regularly worked a night shift as a bartender on Monday and Tuesday from approximately 5:00 p.m. to 12:30 a.m., a day shift as a server on Wednesday from approximately 9:30 a.m. to 6:30 p.m., a night shift as a server on Thursday from approximately 4:00 p.m. to 11:30 p.m., and a night shift as a server on Friday and Saturday from approximately 4:00 p.m. to 12:30 a.m., totaling approximately forty-eight and one-half hours per week.  During the last four months of her employment at Heidelberg, Stefanovic's Friday and Saturday night shifts ended at approximately 1:30 a.m.

35.     In addition to her regular shifts, Stefanovic occasionally waited approximately two additional hours for the dishwashers to complete their closing duties before closing the restaurant and setting the alarm.

36.     Stefanovic occasionally worked shifts that spanned more than ten hours per day, including her shift worked on September 16, 2017, from 12:44 p.m. to 12:16 a.m.

37.     Defendants did not compensate Stefanovic with one additional hour's pay at the statutory minimum hourly wage for each day that her shift spanned more than ten hours.

38.     Defendants regularly paid Stefanovic at the New York tipped minimum wage of $7.50 per hour and, only on few occasions when she complained to management, $13.00 per hour for each hour worked in excess of forty per week.

39.     Defendants did not give Stefanovic oral or written notice of the tip credit provisions of the FLSA and/or NYLL.

40.     Throughout her employment, Defendants failed to compensate Stefanovic at the statutory minimum wage rate required by the FLSA and the NYLL for all of her hours worked.

41.     Throughout her employment, Defendants required Stefanovic to wear a dirndl—a traditional German dress made from loden cloth, as well as short-sleeve white blouses with frills to accompany the dirndl.

42.     Throughout her employment, Stefanovic purchased approximately six dirndl blouses, which cost $10 to $15 each.

43.     Stefanovic dry cleaned the dirndl approximately every three work days, with each dry-cleaning costing approximately $25 to $30.

44.     Defendants failed to launder the dirndl and failed to pay Stefanovic the required weekly uniform maintenance amount in addition to the required minimum wage.

45.     Defendants did not furnish Stefanovic with wage notices at the time of her hiring.

46.     Defendants failed to furnish Stefanovic with weekly statements of wages accurately listing, *inter alia*, hours worked, rates paid, and gross wages.

**Dukic's Hours and Pay**

47.     From August 17, 2016, through approximately mid-September, Dukic regularly worked double-shifts as a bartender and a server on Monday through Friday, from approximately 10:00 a.m. to 12:00 a.m., totaling approximately seventy hours per week.

48.     From approximately mid-September to mid-June 2017, Dukic regularly worked the day shift as a bartender and a server on Monday through Friday, from approximately 10:00 a.m. to 6:30 p.m., totaling approximately forty-two and one-half hours per work week.

49.     From approximately mid-June 2017 through October 27, 2017, Dukic regularly worked the night shift as a server on Tuesday, Wednesday, Thursday, and Sunday from approximately 4:00 p.m. to 11:30 p.m., and the occasional day shift as a server on Friday from approximately 10:00 a.m. to 6:00 p.m., totaling approximately thirty to thirty-eight hours per work week.

50.     In addition to his regular shifts, Dukic occasionally waited approximately two additional hours for the dishwashers to complete their closing duties before closing the restaurant and setting the alarm.

51.     Dukic occasionally worked shifts that spanned more than ten hours per day.

52.     Defendants did not compensate Dukic with one additional hour's pay at the statutory minimum hourly wage for each day that his shift spanned more than ten hours.

53.     Defendants regularly paid Dukic at the New York tipped minimum wage of $7.50 per hour and, on occasion, $13.00 per hour for each hour worked in excess of forty per week.

54.     Defendants did not give Dukic oral or written notice of the tip credit provisions of the FLSA and/or NYLL.

55.     Throughout his employment, Defendants failed to compensate Dukic at the statutory minimum wage rate required by the FLSA and the NYLL for all of his hours worked.

56.     Defendants did not furnish Dukic with wage notices at the time of his hiring.

57.     Defendants failed to furnish Dukic with weekly statements of wages accurately listing, *inter alia*, hours worked, rates paid, and gross wages.

**Novakovic's Hours and Pay**

58.     From at least March 2012 to mid-2014, Novakovic worked as a bartender on Friday and Saturday from approximately 6:00 p.m. to 4:00 a.m. and as a server approximately three days per week, from approximately 4:00 p.m. to 12:30 a.m., totaling approximately forty-five and a half hours per work week.  Novakovic regularly worked without receiving a break for the entirety of her shift.

59.     During the period she worked in 2014, Novakovic worked under the title of "manager" at Heidelberg, in addition to working one to two days per week as a server from approximately 4:00 p.m. to 12:00 a.m.  She received approximately $700 per week for her work during the period she worked both as a "manager" and a server.

60.     During her employment under the title of manager, Novakovic did not have the authority to hire and fire employees or set the wage rates of other Heidelberg employees.  Novakovic had the keys to the restaurant and was responsible for running Heidelberg's social media, but was required to call Matischak prior to making any managerial decisions at Heidelberg.

61.     From September 14, 2016, through approximately August 2017, Novakovic worked the night shift on Wednesday and Thursday from approximately 4:00 p.m. to 11:30 p.m., Friday and Saturday from approximately 4:00 p.m. to 12:30 a.m., and a double shift on Sunday from approximately 10:00 a.m. to 1:00 a.m., totaling approximately forty-seven hours per workweek.

62.     From approximately September 2017 through December 2, 2017, Novakovic worked the night shift at Heidelberg as a bartender, on Thursday and Saturday from approximately 6:00 p.m. to 2:00 a.m., and Monday and Friday as a server from approximately 4:00 p.m. to 12:00 a.m., totaling approximately thirty-two hours per workweek.

63.     During Heidelberg's busy season during the winter holidays, from about December to January, Novakovic occasionally worked two straight weeks of double shifts without a day off.

64.     In addition to her regular shifts, Novakovic occasionally waited approximately two additional hours for the dishwashers to complete their closing duties before closing the restaurant and setting the alarm.

65.     Novakovic occasionally worked shifts that spanned more than ten hours per day.

66.     Defendants did not compensate Novakovic with one additional hour's pay at the statutory minimum hourly wage for each day that her shift spanned more than ten hours.

67.     Aside from the few months in 2014 during which she worked as a manager, Defendants regularly paid Novaković at the New York tipped minimum wage rate of $5.00 per hour from approximately 2011 through approximately December 31, 2015, and $7.50 per hour from approximately 2016 through the end of her employment on December 2, 2017.  Defendants paid Novakovic more per hour for each hour worked in excess of forty per work week.

68.     Defendants did not give Novakovic oral or written notice of the tip credit provisions of the FLSA and/or NYLL.

69.    Aside from the few months in 2014 during which she worked under the title of "manager," Defendants failed to compensate Novakovic at the statutory minimum wage rate required by the FLSA and the NYLL for all of her hours worked.

70.    Throughout her employment, Defendants required Novakovic to wear a traditional German dirndl at work.

71.    Defendants gave Novakovic one dirndl at the commencement of her employment, but required that she buy an additional dirndl for $120 in 2013. Defendants did not reimburse Novakovic for her purchase of the additional dirndl.

72.    Defendants also required Novakovic to purchase short-sleeve white blouses with frills to accompany the dirndl.

73.    Novakovic purchased approximately 20 drindl blouses, which cost around $10 each.

74.    Novakovic dry cleaned the dirndl approximately every 10 days, with each dry clean costing approximately $15 to $20.

75.    Defendants failed to launder the dirndl, and failed to pay Novakovic the required weekly uniform maintenance amount in addition to the required minimum wage.

76.    Defendants did not furnish Novakovic with wage notices at the time of her hiring or whenever there was a change in her wage rate.

77.    Defendants failed to furnish Novakovic with weekly wage statements accurately listing, *inter alia*, hours worked, rates paid, and gross wages.

## FIRST CLAIM
### (Fair Labor Standards Act – Unpaid Minimum Wage)

78.    Plaintiffs repeat and reallege all foregoing paragraphs as if fully set forth herein.

79.     Defendants are employers within the meaning of 29 U.S.C. §§ 203(e) and 206(a), and employed Plaintiffs.

80.     Defendants were required to pay to Plaintiffs the applicable minimum wage rate for each hour worked up to forty in one week.

81.     Defendants were not eligible to avail themselves of the federal tipped minimum wage rate under the FLSA because:

      a.     Defendants were required to, but failed to, inform Plaintiffs of the provisions of subsection 203(m) of the FLSA, 29 U.S.C. § 203(m); and

      b.     Defendants required Plaintiffs to spend more than twenty percent of their shift performing non-tipped work.

82.     Defendants failed to pay Plaintiffs the minimum wages to which they are entitled under the FLSA.

83.     Defendants were aware or should have been aware that the practices described in this Complaint were unlawful and have not made a good faith effort to comply with the FLSA with respect to the compensation of Plaintiffs.

84.     As a result of Defendants' willful violations of the FLSA, Plaintiffs suffered damages by being denied minimum wages in accordance with the FLSA in amounts to be determined at trial, and are entitled to recovery of such amounts, liquidated damages, pre- and post-judgment interest, attorneys' fees and costs of this action, and other compensation pursuant to 29 U.S.C. § 216(b).

**SECOND CLAIM**
**(New York Labor Law – Unpaid Minimum Wage)**

85.     Plaintiffs repeat and reallege all foregoing paragraphs as if fully set forth herein.

86.     Defendants are employers within the meaning of the NYLL §§ 190, 651(5), 652, and supporting New York State Department of Labor ("NYDOL") Regulations, and employed Plaintiffs.

87.     The NYLL and its supporting regulations require that employers pay employees at least the minimum wage for all hours worked weekly up to forty.

88.     The minimum wage provisions of Article 19 of the NYLL and the supporting NYDOL regulations apply to Defendants.

89.     Defendants were not eligible to avail themselves of the tipped minimum wage rate under the NYLL because:

      a.     Defendants were required to, but failed to, inform Plaintiffs of the tip credit provisions of the NYLL and the supporting NYDOL Regulations; and

      b.     Defendants required Plaintiffs to spend more than twenty percent of their shift, or at least two hours per shift, performing non-tipped work.

90.     Defendants failed to pay Plaintiffs the minimum hourly wages to which they are entitled under the NYLL.

91.     Defendants have willfully violated the NYLL by knowingly and intentionally failing to pay Plaintiffs minimum hourly wages.

92.     As a result of Defendants' violations of the NYLL, Plaintiffs are entitled to recover their unpaid wages, reasonable attorneys' fees and costs of the action, liquidated damages and pre- and post-judgment interest.

## THIRD CLAIM
### (Fair Labor Standards Act – Unpaid Overtime)

93.     Plaintiffs repeat and reallege all foregoing paragraphs as if fully set forth herein.

94.     Defendants are required to pay Plaintiffs one and one-half (1½) times the regular rate at which Plaintiffs were employed, and which equaled at least the minimum wage, for all hours worked in excess of forty hours in a workweek pursuant to the overtime wage provisions set forth in the FLSA, 29 U.S.C. § 207, *et seq.*

95.     Defendants have failed to pay Plaintiffs the overtime wages to which they are entitled under the FLSA.

96.     Defendants have willfully violated the FLSA by knowingly and intentionally failing to pay Plaintiffs overtime wages.

97.     Due to Defendants' violations of the FLSA, Plaintiffs are entitled to recover their unpaid overtime wages, liquidated damages, reasonable attorneys' fees and costs of the action, and pre- and post-judgment interest.

**FOURTH CLAIM**
**(New York Labor Law – Unpaid Overtime)**

98.     Plaintiffs repeat and reallege all foregoing paragraphs as if fully set forth herein.

99.     Under the NYLL and supporting NYDOL Regulations, Defendants were required to pay Plaintiffs one and one half (1½) times the regular rate of pay, which is equal to at least the minimum wage, for all hours they worked in excess of forty.

100.    Defendants failed to pay Plaintiffs the overtime wages to which they were entitled under the NYLL.

101.    Defendants have willfully violated the NYLL by knowingly and intentionally failing to pay Plaintiffs overtime wages.

102.    Due to Defendants' willful violations of the NYLL, Plaintiffs are entitled to recover their unpaid overtime wages, reasonable attorneys' fees and costs of the action, liquidated damages and pre- and post-judgment interest.

## FIFTH CLAIM
### (New York Labor Law – Spread-of-Hours Pay)

103.    Plaintiffs repeat and reallege all foregoing paragraphs as if fully set forth herein.

104.    Defendants willfully failed to pay Plaintiffs additional compensation of one hour's pay at the basic minimum hourly wage rate for each day during which Plaintiffs' shifts spread over more than ten hours.

105.    By Defendants' failure to pay Plaintiffs spread-of-hours pay, Defendants willfully violated NYLL Article 19, §§ 650, *et seq.*, and the supporting NYDOL Regulations, including, but not limited to, 12 N.Y.C.R.R. § 146-1.6.

106.    Due to Defendants' willful violations of the NYLL, Plaintiffs are entitled to recover an amount prescribed by statute, reasonable attorneys' fees and costs of the action, pre- and post-judgment interest, and liquidated damages.

## SIXTH CLAIM
### (New York Labor Law – Uniform Violations)

107.    Plaintiffs repeat and reallege all foregoing paragraphs as if fully set forth herein.

108.    Defendants required Plaintiffs Stefanovic and Novakovic to wear a uniform consisting of a traditional German dirndl as well as special white shirts.

109.    Defendants failed to launder and/or maintain the required uniforms for Plaintiffs Stefanovic and Novakovic, and failed to pay them the required weekly amount in addition to the required minimum wage.

110.    By failing to pay Plaintiffs Stefanovic and Novakovic for the maintenance of the required uniforms, Defendants have willfully violated the NYLL, and the supporting New York State Department of Labor Regulations.

111.    Due to Defendants' willful violations of the NYLL, Plaintiffs Stefanovic and Novakovic are entitled to recover from Defendants the costs of maintaining their uniforms, liquidated damages as provided for by the NYLL, reasonable attorneys' fees, costs, and pre- and post-judgment interest.

### SEVENTH CLAIM
### (New York Labor Law – Failure to Provide Wage Notices)

112.    Plaintiffs repeat and reallege all foregoing paragraphs as if fully set forth herein.

113.    The NYLL and WTPA require employers to provide all employees with a written notice of wage rates at the time of hire and whenever there is a change to an employee's rate of pay.

114.    In violation of NYLL § 195(1), Defendants failed to furnish to Plaintiffs at the time of hiring, or whenever there was a change to Plaintiffs' rates of pay, wage notices containing the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances; the regular pay day designated by the employer in accordance with NYLL § 191; the name of the employer; any "doing business as" names used by the employer; the physical address of the employer's main office or principal place of business, and a mailing address if different; the telephone number of the employer, and anything otherwise required by law.

115.    Due to Defendants' violation of NYLL § 195(1), Plaintiffs are entitled to recover from Defendants liquidated damages of $50 per work day that the violation occurred, up to a maximum of $5,000, reasonable attorneys' fees, and costs and disbursements of the action, pursuant to the NYLL § 198(1-b).

**EIGHTH CLAIM**
**(New York Labor Law – Failure to Provide Accurate Wage Statements)**

116.     Plaintiffs repeat and reallege all foregoing paragraphs as if fully set forth herein.

117.     The NYLL and WTPA also require employers to provide employees with an accurate wage statement each time they are paid.

118.     Defendants failed to furnish to Plaintiffs with each payment of wages an accurate statement listing: the dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; the regular hourly rate or rates of pay; the overtime rate or rates of pay; the number of regular hours worked, and the number of overtime hours worked; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; and net wages; in violation of the NYLL § 195(3).

119.     Due to Defendants' violations of the NYLL § 195(3), Plaintiffs are entitled to recover from the Defendants liquidated damages, reasonable attorneys' fees, and costs and disbursements of the action, pursuant to the NYLL § 198(1-d).

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully request that this Court enter a judgment:

a.     declaring that Defendants have violated the minimum and overtime wage provisions of the FLSA and the NYLL;

b.     declaring that Defendants have violated the spread-of-hours provisions of the NYLL and the New York State Department of Labor Regulations;

c.     declaring that Defendants violated the notice and wage statement provisions of the Wage Theft Prevention Act;

      d.     declaring that Defendants' violations of the FLSA and NYLL were willful;

      e.     awarding Plaintiffs unpaid minimum and overtime wages;

      f.     awarding Plaintiffs unpaid spread-of-hours pay;

      g.     awarding Plaintiffs liquidated damages in an amount equal to the total amount of the wages found to be due;

      h.     awarding Plaintiffs statutory damages as a result of Defendants' failure to furnish accurate wage statements and annual wage notices pursuant to the NYLL;

      i.     awarding Plaintiffs pre- and post-judgment interest under the FLSA and the NYLL;

      j.     awarding Plaintiffs reasonable attorneys' fees and costs pursuant to the FLSA and the NYLL; and

      k.     awarding such other and further relief as the Court deems just and proper.

Dated:    New York, New York
          March 8, 2018

                            PECHMAN LAW GROUP PLLC

                            By: _____
                                Louis Pechman
                                Gregory Slotnick
                                Pechman Law Group PLLC
                                488 Madison Avenue - 17th Floor
                                New York, New York 10022
                                (212) 583-9500
                                pechman@pechmanlaw.com
                                slotnick@pechmanlaw.com
                                *Attorneys for Plaintiffs*

**EXHIBIT A**

## BAR OPENING / SET UP

### ^ Turn on

* Necessary overhead lights and under the bar

* Stereo

* TV

### ^ Set up

* Rubber mats (small 'Radeberger' mat to the very left, big rectangular one for the white wine

  bucket to the right of the rail)

* Hook cocktail utensils into the ice box

* Set up the waiters ice box

* arrange napkin and straws boxes (red one= waiters corner/ to the left of the rail)

* Fruit box: check if it's clean and if fruits are still useable, clean if necessary (!!!), cut new fruits,

  refill, put in the waiters' corner (don't forget the forks and spoons)

* Fill one bucket with and white wine (1 bottle of each); place it on the bar (far left/to the right

  of the rail

* Soda gun: Take it out of the water, clean it and put it together

* Clean and re-fill juice container (Tomato juice and fresh orange juice)

* Fill re bleach bucket

* Wipe and fill sink: **Left** with hot water and soap (splash of liquid from blue can in cabinet)

  **Right** one with cold water and sanitizer (blue liquid in the pitcher)

* Bring up 2 bins (1 for dirty plates and 1 for empty bottles)

### ^ Beer tap

* Put the grids in place

* Clean beer tower / brass

* Check all the beer lines / tap the beers

### ^ Check & re-stock

*! Make sure you re-stock the fridge / freezer downstairs as well!!*

 * Red wine (3 each – in cabinet, 1 top)

 * White wine (3 each – 2 in fridge, 1 in bucket)

* Bottled beer (6 each in fridge)

* Liquor and Schnapps

* Juices, syrups and cocktail ingredients (if needed)

* Lemons / limes /cherries / olives / horseradish / celery

* Napkins and straws

* Plates and silverware

* Towels

**^ Time to open!!**

* Unlock and open the front door

* Bring the sign outside

* Check lights / set up outside

* Put keys on the old register


## BAR CLOSING

^ Time to close!

* Bring in the sign

* Check the lights & outside area

* Lock the door

**^ Tidying up**

* Empty out wine bucket and put white wine into the fridge

* Put dirty napkins into laundry bin

* Put away the candles, napkin boxes and coasters (corner to the right)

* Send all dirty dishes downstairs

* Fill empty bin with: all Rubber mats, bar utensils, beer tab grids, cutting board, forks, and spoons

from fruit box and fruit box (if needs to be cleaned)and bring downstairs

* Bring bin with empty bottles downstairs

* Check if the back door (Kitchen) is closed

**^Clean**

* Wipe down bar, flap, register and printer

* Wipe down speed racks and bottles

* Wipe down the beer tower and clean beer tabs

* Poor hot water into beer tab drain to avoid that it gets clogged

* Clean soda gun, break down and put into stein with soda water

* Clean fridge and freezer incl. doors and gaskets

* Drop bar sinks (one at a time) and clean sinks (incl. glass washer)


**^ Finally**

* Check Out

Press the following buttons in the register

- Server menu

-Server report

-Server Audits > choose your audit you want to close

-Close Server Audit

* Put up the bar stools

* Turn off TV

* Turn off stereo – charge I-pod over night

* Turn off all lights

* Double check everything

*Clock Out

*Set alarm

SIDE – WORK – whenever you have time

^ Clean

* Polish glasses (not only wash, I mean **POLISH** with a napkin!)

* Wipe the bar, all surfaces, chairs, bench, and barrel

* Clean beer tower

* Clean fridge and freezer incl. doors   and gaskets

* Removes and dust bottles

* Dust and wipe shelves

* Clean ice bins (all three of them)

* Bar candies, condiment dispenser, salt & pepper

* Clean menus

* Wipe the register and printer

* Windex bar mirrors

* Clean soda gun

^ Organize and re-stock

* Get plates and silverware

* Cut fruits- make sure you use a new plastic container and write the date on it

* Check candles

* Check the write wine bucket if there's enough ice (bottles not floating)

* Sort and arrange menus


**And Remember:**

> Order and cleanliness is important – the bar surroundings mirrors your works!

> Nothing should be put on the floor

> <u>Never</u> place anything into the ice that goes into the guest's glasses!

> Think ahead – you never know when it might get busy

> Support your co-workers!

> Never count money in front of customers!

> You are responsible for your bank drop or sales!

# Review of Server side -work

## Dining Room

* Set up soap solution and clean rags for wiping tables
* Wipe down all tables, chairs, and benches
* Wipe down the window sills, side boards and picture frames
* Clean and fill salt and pepper shakers
* Clean and refill all candles
* Check flower and daily clean water vases, Discard dead or dying
* Clean (Shelves, bread warmer, coffee service trays, etc.) and stock server station coffee, teas, sugar, candies, oil & vinegar, coffee filters, to-go containers, etc.)
* Clean the coffee machine, coffee filter tray, the inside top of machine, burners and pots
* Set up server station. Bring bread up from walk-in, ice bin for butter, ice bin for milk, cutting knife
* Set up sanitizing bucket for service (every station)
* Make sure food service gloves are available (every station)
* Make sure that bus bin and glass racks for service are in place
* Make sure that the linen basket is empty and clean
* Check and refill Andes mints if necessary
* Wipe down all menu and /or menu covers
* Polish water glasses
* Polish flatware
* Wipe down or clean all the Computer before start

## Kitchen Station

* Make sure that linen hampers are in proper place and not over filled. If so remove bag, replace bag and refill properly
* Clean all trays
* Stock all take out containers and lids
* Stock all take out utensils
* Stocks take out utensils
* Stock take out and doggie bags
* Stock dollies
* Remove everything from dessert refrigerator
* Clean dessert refrigerator, work top, inside bins, hood, shelves etc.
* Clean and sanitize all server cutting boards
* Clean and refill all condiment containers (ketchup, mustard, sour cream, and apple sauce, etc.)
* Make sure the proper utensils are available. Small tongs for lemons, pastry bag for whipped cream, spoon for sour cream and horse radish, a ladle for apple sauce, etc.