UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------------- X
ANDJELA STEFANOVIC, UROS DUKIC,    :
BOJANA NOVAKOVIC, and DANIJEL MIRKOV, :
       :
       Plaintiffs,    :
       :
     -against-    :     **18 Civ. 2093 (LTS) (KNF)**
       :
OLD HEIDELBERG CORP. d/b/a HEIDELBERG  :
RESTAURANT and EVA MATISCHAK,    :
       :
       Defendants.    :
--------------------------------------------------------------------- X

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' OPPOSITION,
CROSS-MOTION, AND MOTION FOR PARTIAL SUMMARY JUDGMENT**

PECHMAN LAW GROUP PLLC
Louis Pechman
Galen C. Baynes
488 Madison Avenue, 17th Floor
New York, New York 10022
Tel: (212) 583-9500
pechman@pechmanlaw.com
baynes@pechmanlaw.com

# TABLE OF CONTENTS

INTRODUCTION .................................................................................................... 1

BACKGROUND AND RELEVANT PROCEDURAL HISTORY .......................................... 1

STATEMENT OF FACTS .......................................................................................... 2

SUMMARY JUDGMENT STANDARD ......................................................................... 4

ARGUMENT .......................................................................................................... 5

I.   DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ON PLAINTIFFS' OVERTIME CLAIMS SHOULD BE DENIED ................................................................................................. 5

II.   PLAINTIFFS ARE ENTITLED TO SUMMARY JUDGMENT ON THEIR WAGE STATEMENT CLAIMS BECAUSE DEFENDANTS PROVIDED DEFICIENT WAGE STATEMENTS ......................... 7

III.   PLAINTIFFS ARE ENTITLED TO SUMMARY JUDGMENT ON THEIR WAGE NOTICE CLAIMS 9

IV.   PLAINTIFFS ARE ENTITLED TO SUMMARY JUDGMENT ON THEIR SPREAD-OF-HOURS CLAIMS ................................................................................................................ 11

V.   FAITHLESS SERVANT COUNTERCLAIM ................................................................ 12

A.   The Faithless Servant Doctrine Conflicts with and Is Preempted by the FLSA 13

1.   Conflict Preemption Principles ................................................................. 13

2.   Mandates and Objectives of the FLSA ...................................................... 13

3.   The Faithless Servant Doctrine ................................................................. 15

4.   The Faithless Servant Doctrine Is an Obstacle to the Accomplishment of the FLSA's Objectives ...................................................................................... 16

B.   The Facts of this Case Do Not Support Application of the Faithless Servant Doctrine .............................................................................................................. 19

C.   Material Issues of Fact Exist with Respect to Defendants' Faithless Servant Claim Against Mirkov .......................................................................................... 21

CONCLUSION ...................................................................................................... 22

## TABLE OF AUTHORITIES

CASES

*Allianz Ins. Co. v. Lerner*, 416 F.3d 109 (2d Cir. 2005) -------------------------------------------- 4

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986)-------------------------------------------- 4, 5

*Barrentine v. Arkansas-Best Freight Sys., Inc.*, 450 U.S. 728 (1981) -------------------------- 13, 17

*Brito v. Lucky Seven Rest. & Bar LLC*, 19-cv-03876 (PAE) (KHP), 2020 WL 6972527
    (S.D.N.Y. July 31, 2020)------------------------------------------------------------------------------ 8

*Brooklyn Sav. Bank v. O'Neil*, 324 U.S. 697 (1945) ------------------------------------------- 14, 18

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) --------------------------------------------------------- 4

*Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199 (2d Cir. 2015)--------------------------------14

*Copper v. Cavalry Staffing, LLC*, 132 F. Supp. 3d 460 (E.D.N.Y. 2015) --------------------------- 7

*DeNigris v. N.Y.C. Health & Hosps.*, 861 F. Supp. 2d 185 (S.D.N.Y. 2012)----------------------- 5

*Doe v. Solera Capital LLC*, 18-cv-1769, 2019 WL 1437520 (S.D.N.Y. Mar. 31, 2019) ---- 20, 21

*English v. Gen. Elec. Co.*, 496 U.S. 72 (1990)---------------------------------------------------------13

*Feiger v. Iral Jewelry, Ltd.*, 41 N.Y.2d 928 (1977) -------------------------------------------------15

*Gamero v. Koodo Sushi Corp.*, 272 F. Supp. 3d 481 (S.D.N.Y. 2017)-------------------------------- 6

*Garcia v. Saigon Mkt. LLC*, No. 15-CV-9433 (VSB), 2019 WL 4640260, at *5 (S.D.N.Y. Sept.
    24, 2019) --------------------------------------------------------------------------------------------- 9, 10

*Geier v. Am. Honda Motor Co.*, 529 U.S. 861 (2000)--------------------------------------------------13

*Gonzalez v. Masters Health Food Serv. Inc.*, 14-cv-07603 (VEC), 2017 WL 3835960, at *20
    (S.D.N.Y. July 27, 2017)------------------------------------------------------------------------------- 7

*Grewal v. Cuneo*, 13-cv-6836 (RA), 2016 WL 308803, at *7 (S.D.N.Y. Jan. 25, 2016) ---------21

*Hines v. Davidowitz*, 312 U.S. 52 (1941)------------------------------------------------------------------13

*Inclan v. New York Hosp. Grp., Inc.*, 95 F. Supp. 3d 490 (S.D.N.Y. 2015) ------------------------ 8

*Jeffreys v. City of New York*, 426 F.3d 549 (2d Cir. 2005) ------------------------------------------- 4

*Jewell Ridge Coal Corp. v. Local No. 6167, Unt. Mine Workers of Am.*, 325 U.S. 161 (1945) --17

*Khereed v. W. 12th St. Rest. Grp. LLC*, 15-cv-1363 (PKC), 2016 WL 590233 (S.D.N.Y. Feb. 11, 2016) --------------------------------------------------------------------------------- 8

*Lamdin v. Broadway Surface Adver. Corp.*, 272 N.Y. 133 (1936) -------------------------------- 15

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986) -------------------------- 4

*Murray v. Beard*, 102 N.Y. 505 (1886) ------------------------------------------------------- 15

*Overnight Motor Transportation Co. v. Missel*, 316 U.S. 572 (1942)------------------------------ 14

*Perkins v. Bronx Leb. Hosp. Ctr.*, 14-cv-1681 (JCF), 2016 WL 6462117 (S.D.N.Y. Oct. 31, 2016) ----------------------------------------------------------------------------------- 4, 5

*Phansalkar v. Andersen Weinroth & Co., L.P.*, 344 F.3d 184 (2d Cir. 2003)----------------- 15, 19

*Podell v. Citicorp Diners Club, Inc.*, 112 F.3d 98 (2d Cir. 1997)-------------------------------- 4

*Quinn v. Syracuse Model Neighborhood Corp.*, 613 F.2d 438 (2d Cir. 1980)--------------------- 4

*Salinas v. Starjem Rest. Corp.*, 2015 WL 4757618 (S.D.N.Y. Aug. 12, 2015) -------------------- 8

*Sanders v. Madison Square Garden, L.P.*, 06-cv-589 (GEL), 2007 WL 1933933 (S.D.N.Y. July 2, 2007) ------------------------------------------------------------------------------------19

*Torres v. Gristede's Operating Corp.*, 628 F. Supp. 2d 447 (S.D.N.Y. 2008)---------------------20

*Turner v. Konwenhoven*, 100 N.Y. 115 (1885) ----------------------------------------------- 15

*Velez v. 111 Atlas Rest. Corp.*, 14-cv-6956 (MKB) (CLP), 2016 WL 9307471 (E.D.N.Y. Aug. 11, 2016) ---------------------------------------------------------------------------------- 8

*Western Elec. Co. v. Brenner*, 41 N.Y.2d 291 (1977)------------------------------------------- 15

*Williamson v. Mazda Motor of Am., Inc.*, 562 U.S. 323 (2011)--------------------------------- 13

**STATUTES**

12 NYCRR § 146-1.6. ------------------------------------------------------------------------11

12 NYCRR § 146-3.1--------------------------------------------------------------------------11

29 U.S.C. §207-------------------------------------------------------------------------------14

29 U.S.C. § 202 ------------------------------------------------------------------------- 14, 16

29 U.S.C. § 203 ------------------------------------------------------------------------------16

29 U.S.C. § 213 ------------------------------------------------------------------------16

29 U.S.C. § 216 ------------------------------------------------------------------------14

29 U.S.C. §§ 206 ----------------------------------------------------------------------14

Fed. R. Civ. P. 56 ---------------------------------------------------------------------- 4

N.Y. Lab. Law § 198(1-b) ----------------------------------------------------------10

N.Y. Lab. Law § 198(1-d) ----------------------------------------------------------- 9

N.Y. Lab. Law § 198(3) -------------------------------------------------------------- 1

# INTRODUCTION

Plaintiffs Andjela Stefanovic ("Stefanovic"), Bojana Novakovic ("Novakovic"), Uros Dukic ("Dukic"), and Danijel Mirkov ("Mirkov") (collectively, "Plaintiffs") respectfully submit this Memorandum in support of their consolidated Opposition, Cross-Motion, and Motion for Partial Summary Judgment in response to the Motion for Partial Summary Judgment (ECF No. 50) filed by Defendants Old Heidelberg Corp. ("Heidelberg") and Eva Matischak (collectively "Defendants").

For the reasons set forth below, the Court should: (1) deny Defendants' motion for summary judgment on Plaintiffs' overtime claims (Claims III and IV); (2) grant Plaintiffs' cross-motion for summary judgment on their wage statement claims (Claim VIII); (3) grant Plaintiffs' motion for summary judgment on their wage notice (Claim VII) and spread-of-hours claims (Claim V); and (4) grant Plaintiffs' motion for summary judgment on Defendants' faithless servant counterclaims or, in the alternative, deny Defendants' motion for summary judgment on their faithless servant counterclaim with respect to Mirkov.[1]

# BACKGROUND AND RELEVANT PROCEDURAL HISTORY

Plaintiffs, four former bartenders and servers at Heidelberg Restaurant, commenced this wage-and-hour action by filing a Complaint on March 8, 2018 (ECF No. 1), later amended (*see* First Amended Complaint ("FAC"), ECF No. 12).[2]  Plaintiffs' FAC alleges that Defendants failed to pay Plaintiffs: (1) required minimum wages under the

---

[1] As indicated in Defendants' Motion (ECF No. 50 at 9, n.1), Plaintiffs do not dispute that a three-year statute of limitations applies to Plaintiffs' claims under the Fair Labor Standards Act, and Novakovic does not seek recovery under the FLSA for the period of time falling outside of the three-year statute of limitations period.  The entire period of Novakovic's employment is, however, covered by the NYLL's six-year statute of limitations period.  N.Y. Lab. Law § 198(3).

[2] The FAC is the operative Complaint in this case.

Fair Labor Standards Act ("FLSA") and the New York Labor Law ("NYLL") (Claims I and II); (2) required overtime wages under the FLSA and NYLL (Claims III and IV); (3) spread-of-hours pay under the NYLL (Claim V); and (4) uniform maintenance pay under the NYLL (Claim VI). (ECF No. 12 at 15-19). The FAC further alleges that Defendants failed to provide Plaintiffs with accurate wage notices (Claim VII) and wage statements (Claim VIII) required by the NYLL's Wage Theft Prevention Act ("WTPA"). (ECF No. 12 at 19-21).

Defendants answered Plaintiffs' FAC, and later amended their Answer to bring common law counterclaims against Plaintiffs under New York's faithless servant doctrine. (ECF Nos. 14, 15). After litigation of Plaintiffs' motion to dismiss Defendants' counterclaims, Defendants filed an Amended Counterclaim against all Plaintiffs (ECF No. 30-3). Following the exchange of paper discovery and the depositions of Plaintiffs, Eva Matischak, and Andreas Matischak (as representative of Heidelberg), Defendants filed their Motion for Partial Summary Judgment (ECF No. 50), seeking summary judgment on Plaintiffs' overtime and wage statement claims and on Defendants' faithless servant claim against Mirkov. Plaintiffs now oppose Defendants' motion with respect to their overtime claims, cross-move for summary judgment on their wage statement claims, move for summary judgment on their wage notice and spread-of-hour claims, and move for summary judgment on Defendants' faithless servant counterclaims against all Plaintiffs.

### STATEMENT OF FACTS

Heidelberg Restaurant in New York City is one of the oldest family-run German restaurants in the United States. Heidelberg employed all four Plaintiffs as servers and bartenders. Specifically, Heidelberg employed: (1) Stefanovic from October 31, 2016 through November 5, 2017 (Pls.' Local Rule 56.1 Statement ("Pls.' St.") at ¶ 1); (2)

Novakovic from approximately March 2012 through October 2014, and again from approximately June 2015 through November 2017 (Defendants' Local Rule 56.1 Statement ("Defs.' St.") at ¶¶ 1-4); (3) Dukic from approximately August 2016 through October 2017 (Defs.' St. at ¶ 23); and (4) Mirkov from approximately March 2016 through April 2018 (Defs.' St. at ¶ 7, 15).

Throughout Plaintiffs' employment, Heidelberg deducted a tip credit from wages paid to Plaintiffs. (Pls.' St. at ¶¶ 6, 18, 30, 42). Although Heidelberg provided wage notices to Plaintiffs, the wage notices did not indicate allowances taken by Heidelberg against Plaintiffs' wages in the form of a tip credit. (Pls.' St. at ¶¶ 2-5, 14-17, 26-29, 38-41). Similarly, while Heidelberg provided wage statements (i.e., paystubs) to Plaintiffs, the wage statements did not indicate the per-hour amount of the tip credit allowance taken by Heidelberg or the total weekly amount of the tip credit allowance taken. (Pls.' St. at ¶ 7, 19, 31, 43). Further, the wage statements provided to Plaintiffs did not accurately report the total number of hours worked by Plaintiffs per workweek as reflected in Heidelberg's batch records. (Pls.' St. at ¶ 10, 22, 34, 46).

Each Plaintiff worked overtime hours (hours in excess of 40 in the workweek) during at least one week of his or her employment, and Heidelberg paid Plaintiffs at tipped overtime wage rates for those overtime hours. (Pls.' St. at ¶ 13, 25, 37, 49). Each Plaintiff worked at least two shifts in excess of ten hours during his or her employment with Heidelberg. (Pls.' St. at 11, 23, 35, 47). Heidelberg did not provide Plaintiffs with spread-of-hours pay—an extra hour's pay at the basic statutory minimum wage rate— when they worked shifts spanning over more than ten hours. (Pls.' St. at 12, 24, 36, 48).

On approximately twelve occasions during his employment, Mirkov altered customer tips by entering a higher tip amount into Heidelberg's point-of-sale system than the customer had indicated on their receipt. (Defs.' St. at ¶ 8).

## SUMMARY JUDGMENT STANDARD

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56; *see also Allianz Ins. Co. v. Lerner*, 416 F.3d 109, 113 (2d Cir. 2005). A fact is "material" if it "might affect the outcome of the suit under [] governing law," and is genuinely in dispute "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The movant bears the initial burden of establishing the "'absence of a genuine issue of material fact,'" and may "discharge this burden by showing that the nonmoving party has 'fail[ed] to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'" *Perkins v. Bronx Leb. Hosp. Ctr.*, 14-cv-1681 (JCF), 2016 WL 6462117, at *3 (S.D.N.Y. Oct. 31, 2016) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986)). The opposing party must then present "specific facts showing that there is a genuine issue for trial." *Celotex Corp.*, 477 U.S. at 324 (quoting former Fed. R. Civ. P. 56(e)).

"The mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Jeffreys v. City of New York*, 426 F.3d 549, 553 (2d Cir. 2005) (quoting *Anderson*, 477 U.S. at 2552). "The litigant opposing summary judgment 'may not rest upon mere conclusory allegations or denials,' but must bring forth 'some affirmative indication that his version of relevant events is not fanciful.'" *Podell v. Citicorp Diners Club, Inc.*, 112 F.3d 98, 101 (2d Cir. 1997) (quoting *Quinn v. Syracuse Model Neighborhood Corp.*, 613 F.2d 438, 445 (2d Cir. 1980)); see also *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (nonmoving party "must do more than simply show that there is some

metaphysical doubt as to the material facts"); *DeNigris v. N.Y.C. Health & Hosps.*, 861 F. Supp. 2d 185, 192 (S.D.N.Y. 2012) ("The non-movant may not rely upon speculation and/or conjecture to overcome a motion for summary judgment."). "[W]here the nonmovant's evidence is conclusory, speculative, or not significantly probative," such that the court deems there to be insufficient "'evidence favoring the nonmoving party for a jury to return a verdict for that party,'" the court must grant summary judgment. *Perkins*, 2016 WL 6462117, at *3 (quoting *Anderson*, 477 U.S. at 249–50).

## ARGUMENT

### I. Defendants' Motion for Summary Judgment on Plaintiffs' Overtime Claims Should be Denied

Defendants contend that they are entitled to summary judgment on Plaintiffs' claims for unpaid overtime wages (Claims III and IV). (ECF No. 50 at 12-14). In support of this contention, Defendants rely on Plaintiffs' deposition transcripts for the proposition that "Plaintiffs have no evidence to support their claims that they were not paid for all of the hours that they worked." *Id.* at 12.

Defendants argument fundamentally misunderstands the nature of Plaintiffs' overtime wage claims. Plaintiffs allege that Defendants unlawfully paid Plaintiffs at tipped regular and overtime wage rates, rather than the required non-tipped statutory wage rates. Plaintiffs assert that Defendants were not entitled to take a tip credit against their wages because (1) Defendants' failed to provide Plaintiffs with proper notice of the tip credit, and (2) Defendants required Plaintiffs to spend twenty percent or more of their shifts performing non-tipped duties. (FAC at ¶ 33). If it is established that either Defendants failed to provide proper notice of the tip credit to Plaintiffs, or that Plaintiffs spent twenty percent or more of their workweeks performing non-tipped duties, then Defendants were not entitled to take a tip credit against Plaintiffs' wages and must repay

it to Plaintiffs, including as part of their overtime wages. *See, e.g., Gamero v. Koodo Sushi Corp.*, 272 F. Supp. 3d 481, 500 (S.D.N.Y. 2017), *aff'd*, 752 F. App'x 33 (2d Cir. 2018) (reviewing an employer's compliance obligations where claiming a tip credit against an employee's wages).

It is undisputed that Defendants took a tip credit against Plaintiffs' wages throughout their employment. (Pls.' St. at ¶¶ 6, 18, 30, 42). Defendants payroll records also establish that all Plaintiffs worked at least one overtime hour for which they were paid at the tipped overtime wage rate during their employment. For example, Defendants paid: (1) Stefanovic at a tipped overtime wage rate of $13.00 per hour for five overtime hours recorded on her October 10, 2017 wage statement (Pls.' St. at ¶ 13); (2) Novakovic at a tipped overtime wage rate of $13.00 per hour for five overtime hours recorded on her November 7, 2017 wage statement (Pls.' St. at ¶ 25); (3) Dukic at a tipped overtime wage rate of $13.00 per hour for seven overtime hours recorded on his February 28, 2017 wage statement (Pls.' St. at ¶ 37); and (4) Mirkov at a tipped overtime wage rate of $13.00 per hour for two overtime hours recorded on his September 12, 2017 wage statement (Pls.' St. at ¶ 49).

Accordingly, to be entitled to summary judgment on Plaintiffs' overtime wage claims, Defendants must establish that there is no dispute with respect to whether Defendants were entitled to the tip credit that they took against Plaintiffs' overtime wages. Because Defendants do not attempt to (and cannot) make such a showing, their motion for summary judgment on Plaintiffs' overtime wage claims (Claims III and IV) must be denied.

## II.   Plaintiffs Are Entitled to Summary Judgment on their Wage Statement Claims Because Defendants Provided Deficient Wage Statements

Defendants move for summary judgment on Plaintiffs' NYLL wage statement claims (Claim VIII), arguing that Plaintiffs testified in their depositions that "they received the requisite wage statements required by the NYLL."  (ECF No. 50 at 14).  In response, Plaintiffs cross-move for summary judgment with respect to these claims. Plaintiffs do not dispute that they received wage statements (i.e., paystubs) throughout their employment with Defendants.  However, as detailed below, the record evidence (ignored by Defendants) establishes that the wage statements provided to Plaintiffs were not *accurate*.

The NYLL requires employers to provide detailed wages statements to its employees. NYLL § 195(3).  Wage statements must include, *inter alia*, "(1) the dates of the work covered by that payment of wages; (2) the names of the employee and employer; (3) the address and phone number of the employer; (4) the rate of pay and basis thereof; and (5) any allowances claimed." *Gonzalez v. Masters Health Food Serv. Inc.*, 14-cv-07603 (VEC), 2017 WL 3835960, at *20 (S.D.N.Y. July 27, 2017) (citation omitted).  Moreover, "[t]o satisfy [NYLL] Section 195, *the wage statements must be accurate*." *Id.* (citing *Copper v. Cavalry Staffing, LLC*, 132 F. Supp. 3d 460, 467-68 (E.D.N.Y. 2015)) (emphasis added).

The wage statements Defendants provided to Plaintiffs were deficient in three respects: (1) they did not report spread-of-hours pay to which Plaintiffs were entitled; (2) they did not accurately list total hours Plaintiffs worked; and (3) they did not appropriately reflect the tip credit (*i.e.*, allowance) Defendants took against Plaintiffs' wages.

Defendants' failure to compensate Plaintiffs for spread-of-hours shifts is established below in Section IV.  Because Defendants did not provide Plaintiffs with

spread-of-hours pay, no spread-of-hours pay was included in Plaintiffs' wage statements, rendering the statements incomplete.

Further, Defendants maintained a practice of rounding Plaintiffs' hours down for purposes of their compensation. Because the hours reported on Plaintiffs' wage statements are rounded down, the statements do not report the total hours worked by Plaintiffs per workweek. (Pls.' St. at ¶ 10, 22, 34, 46). Accordingly, the wage statements provided by Defendants were deficient because they failed to report all hours worked by Plaintiffs. *See Velez v. 111 Atlas Rest. Corp.*, 14-cv-6956 (MKB) (CLP), 2016 WL 9307471, at *12 (E.D.N.Y. Aug. 11, 2016) (recommending summary judgment on plaintiffs' wage statement claims where "defendants engaged in a rounding policy such that the actual hours were not reported"); *Brito v. Lucky Seven Rest. & Bar LLC*, 19-cv-03876 (PAE) (KHP), 2020 WL 6972527, at *8 (S.D.N.Y. July 31, 2020) (finding that defendants violated the NYLL's wage statement provision where they provided plaintiffs with statements that "inaccurately indicated" plaintiffs' hours worked).

Finally, the wage statements provided by Defendants are deficient because they fail to indicate the amount of tip credit taken by Defendants against Plaintiffs' wages. (Pls.' St. at ¶ 7, 19, 31, 43). Courts in this district have repeatedly observed that, in order to comply with NYLL § 195(3), wage statements must "expressly identify the per-hour amount of a tip credit and the total amount of the tip-credit allowance." *Khereed v. W. 12th St. Rest. Grp. LLC*, 15-cv-1363 (PKC), 2016 WL 590233, at *4 (S.D.N.Y. Feb. 11, 2016) (citing *Inclan v. New York Hosp. Grp., Inc.*, 95 F. Supp. 3d 490, 502 (S.D.N.Y. 2015); *Salinas v. Starjem Rest. Corp.*, 2015 WL 4757618, at *22 (S.D.N.Y. Aug. 12, 2015)). Because the wage statements Defendants provided do not show the per-hour amount of tip credit taken against Plaintiffs' wages or the total amount of the tip credit allowance, they are deficient,

and Plaintiffs are entitled to summary judgment on their wage statement claims (Claim VIII).

Because each Plaintiff worked at least 20 days for Defendants for which Defendants provided inaccurate wage statements (Pls.' St. at ¶ 50), each Plaintiff is entitled to recover the maximum $5,000 in statutory damages pursuant to NYLL § 198(1-d), in addition to attorneys' fees and costs in an amount to be established. *See* N.Y. Lab. Law § 198(1-d) ("If any employee is not provided a statement or statements as required by subdivision three of section one hundred ninety-five of this article, he or she shall recover in a civil action damages of two hundred fifty dollars for each work day that the violations occurred or continue to occur, but not to exceed a total of five thousand dollars, together with costs and reasonable attorney's fees.").

### III.   Plaintiffs are Entitled to Summary Judgment on their Wage Notice Claims

Plaintiffs are similarly entitled to summary judgment on their wage notice claims (Claim VII).  NYLL § 195(1) requires employers to provide employees at the time of their hire and when their wage rates change with written notice of, *inter alia*, their "rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances[.]"  An employer is liable for wage notice violations where it provides deficient wage notices to an employee by, for example, failing to indicate that a tip credit allowance is being taken against an employee's wages.  *See, e.g., Garcia v. Saigon Mkt. LLC*, No. 15-CV-9433 (VSB), 2019 WL 4640260, at *5 (S.D.N.Y. Sept. 24, 2019) (holding that an employer's failure to list allowances taken in the form of a tip credit was "a clear violation of § 195(1)").

In the instant case, Defendants have produced wage notices provided to Plaintiffs, and Plaintiffs acknowledge their receipt of the notices. (Pls.' St. at ¶¶ 2, 14, 26, 38).

However, the wage notices provided by Defendants were deficient because they failed to list allowances taken against Plaintiffs' wages in the form of a tip credit. (Pls.' St. at ¶¶ 5, 17, 29, 41).  In fact, the wage notices affirmatively represented that *no* allowances were being taken against Plaintiffs' wages, as Defendants checked the box marked "none" in the section of the wage notices address allowances. (Pls.' St. at ¶¶ 4, 16, 28, 40).

In *Garcia*, Judge Broderick found that the plaintiffs were entitled to summary judgment on their wage notice claims under nearly identical circumstances.  There was no dispute in *Garcia* that the defendants had provided wage notices to the plaintiffs. *Garcia*, 2019 WL 4640260 at *5.  However, the notices provided "did not list the allowances that Defendants admittedly took in the form of a tip credit." *Id.*  Instead, on the notices provided, the defendants "either checked 'none' next to the question of whether any allowances had been taken, or left that section of the notice entirely blank." *Id.*  "In no instance did Defendants check the box indicating that they would be taking a credit for 'tips.'" *Id.*

The wage notices provided by Defendants in this case similarly failed to list allowances that Defendants took against Plaintiffs' wages in the form of a tip credit—and in fact affirmatively indicated that no allowances were being taken.  Accordingly, Plaintiffs are entitled to summary judgment on their wage notice claims (Claim VII) because Defendants provided them with deficient wage notices.

Because each Plaintiff worked for Defendants for at least 100 days following Defendants' provision of the deficient wage notices (Pls.' St. at ¶ 50), each Plaintiff is entitled to the maximum $5,000 in statutory damages pursuant to NYLL § 198(1-b), in addition to attorneys' fees and costs in an amount to be established. *See* N.Y. Lab. Law § 198(1-b) ("If any employee is not provided within ten business days of his or her first day of employment a notice as required by subdivision one of section one hundred ninety-

five of this article, he or she may recover in a civil action damages of fifty dollars for each work day that the violations occurred or continue to occur, but not to exceed a total of five thousand dollars, together with costs and reasonable attorney's fees.)

## IV.   Plaintiffs are Entitled to Summary Judgment on their Spread-of-Hours Claims

The NYLL's supporting regulations for the hospitality industry, applicable here, require that on each day when an employee's "spread of hours exceeds 10, an employee shall receive one additional hour of pay at the basic minimum hourly rate." 12 NYCRR § 146-1.6.[3] "The spread of hours is the length of the interval between the beginning and end of an employee's workday." *Id.* In other words, where an employee works a shift whose start and end times are more than ten hours apart, an employer in the hospitality industry must pay the employee an additional hour of pay at the basic statutory minimum wage rate.

Plaintiffs are entitled to summary judgment on their spread-of-hours claims because records maintained by Defendants establish that each Plaintiff worked at least two shifts in excess of ten hours during his or her employment but was not paid the required additional hour of pay at the basic minimum hourly rate.  Defendants' batch records (showing daily hours worked by Plaintiffs) confirm that Stefanovic worked spread-of-hours shifts on July 31 and September 16, 2017 (Pls.' St. at ¶ 11), Novakovic worked spread-of-hours shifts on May 28 and June 25, 2017 (Pls.' St. at ¶ 23), Dukic worked spread-of-hours shifts on February 20, February 22, and March 17, 2017 (Pls.' St. at ¶ 35), and Mirkov worked spread-of-hours shifts on July 22 and October 14, 2017 (Pls.' St. at ¶ 47).  Plaintiffs' earning reports and wage statements confirm that Defendants did

---

[3] Because Heidelberg is a "restaurant" as defined by 12 NYCRR § 146-3.1, the Hospitality Wage Order is applicable in this case.

not pay Plaintiffs an extra hour at the basic minimum wage rate for these shifts. (Pls.' St. at ¶¶ 12, 24, 36, 48).

Because the record evidence establishes that Plaintiffs worked spread-of-hours shifts for which they were not compensated by Defendants with an additional hour of pay at the basic statutory minimum wage rate, Plaintiffs are entitled to summary judgment on their spread-of-hours claims (Claim V).[4]

## V.    Faithless Servant Counterclaim

Defendants move for summary judgment on their faithless servant counterclaim against Mirkov. (ECF No. 50 at 10-12).  In support of their motion, Defendants contend that because Mirkov altered customer tips by entering a higher tip amount into Heidelberg's point-of-sale system than the customer had indicated on their receipt on approximately twelve occasions during his employment, Defendants are entitled to recover $48,289.09 from Mirkov under the faithless servant doctrine—an amount Defendants assert was "the full amount paid to Mirkov since his first faithless act." *Id.* at 11-12.

For the reasons below, the Court should grant Plaintiffs' cross-motion for summary judgment as to Defendants' faithless servant claims because (1) the faithless servant doctrine conflicts with and is preempted by the Fair Labor Standards Act; and (2) Defendants do not have an actionable cause for their faithless servant counterclaims on the facts of this case. Alternatively, the Court should deny Defendants' motion for summary judgment with respect to their counterclaim against Mirkov because material issues of fact exist with respect to the liability period Defendants allege.

---

[4] For purposes of this Motion, Plaintiffs seek only a finding of liability with respect to their spread-of-hours claims, with total damages owed to be determined either at trial or through a damages inquest.

## A. The Faithless Servant Doctrine Conflicts with and Is Preempted by the FLSA

### 1. Conflict Preemption Principles

Federal law preempts state law where: (1) Congress explicitly defines the preemption; (2) state law attempts to regulate a field that Congress intended federal law to occupy exclusively; or (3) state law "actually conflicts with federal law." *English v. Gen. Elec. Co.*, 496 U.S. 72, 79 (1990).

The third circumstance—relevant here—arises where a "state law 'stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.'" *Id.* (quoting *Hines v. Davidowitz,* 312 U.S. 52, 67 (1941)); *see also Williamson v. Mazda Motor of Am., Inc.*, 562 U.S. 323, 330 (2011) ("Under ordinary conflict pre-emption principles a state law that stands as an obstacle to the accomplishment and execution of the full purposes and objectives of a federal law is pre-empted.") (citations and internal quotation marks omitted). This principle applies to both state statutes and state common law claims that run counter to the achievement of the objectives of Congress. *Williamson*, 562 U.S. at 330 (collecting cases).  For example, the Supreme Court has held that a common law negligence action based on an automobile manufacturer's failure to install a driver's-side airbag was preempted where it conflicted with the objectives of federal regulations that permitted manufacturers a range of choices with respect to the installation of passive restraint devices. *Geier v. Am. Honda Motor Co.*, 529 U.S. 861, 874 (2000).

### 2. Mandates and Objectives of the FLSA

The FLSA was enacted "to protect all covered workers from substandard wages and oppressive working hours." *Barrentine v. Arkansas-Best Freight Sys., Inc.*, 450 U.S. 728, 739 (1981).  The statute seeks to combat "labor conditions detrimental to the maintenance of the minimum standard of living necessary for health, efficiency, and general well-

being of workers." 29 U.S.C. § 202.   As the Supreme Court has emphasized, "the FLSA was designed to give specific minimum protections to individual workers and to ensure that each employee covered by the Act would receive a fair day's pay for a fair day's work and would be protected from the evil of overwork as well as underpay." *Barrentine*, 450 U.S. at 739 (quoting *Overnight Motor Transportation Co. v. Missel*, 316 U.S. 572, 578 (1942) (internal quotations, quotation marks and emphases omitted)).   In passing the Act, Congress also recognized "the unequal bargaining power as between employer and employee," and sought "to aid the unprotected, unorganized and lowest paid of the nation's working population; that is, those employees who lacked sufficient bargaining power to secure for themselves a minimum subsistence wage." *Brooklyn Sav. Bank v. O'Neil*, 324 U.S. 697, 706, 707 n.2 (1945) (citations omitted).

To advance these objectives, the FLSA establishes a federal minimum hourly wage rate and requirement of time-and-a-half pay for hours worked in excess of forty per week. 29 U.S.C. §§ 206, 207.  Employers who violate these provisions are subject to both criminal and civil penalties, including an award of liquidated damages in an amount equal to an employee's unpaid wages.   29 U.S.C. § 216(a-b). Courts have jealously guarded the protections afforded by the FLSA, emphasizing the "uniquely protective" nature of the statute.   *See, e.g., Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199, 207 (2d Cir. 2015) (recognizing the FLSA as a "uniquely protective statute," the "primary remedial purpose" of which is "to prevent abuses by unscrupulous employers, and remedy the disparate bargaining power between employers and employees").   As this Court is undoubtedly well-aware, ensuring that covered workers receive the benefit of the FLSA's protections is of such import that FLSA plaintiffs in the Circuit may not even stipulate to the dismissal of their FLSA claims with prejudice absent court review and approval of the terms of their settlement agreement. *Id.* at 206.

14

### 3. The Faithless Servant Doctrine

New York's faithless servant doctrine, on the other hand, is a common law doctrine grounded in agency principles, the modern version of which the Second Circuit has traced back to New York judicial decisions in the late-1800s. *See Phansalkar v. Andersen Weinroth & Co., L.P.*, 344 F.3d 184, 200-01 (2d Cir. 2003) (citing *Murray v. Beard*, 102 N.Y. 505, 7 N.E. 553 (1886); *Turner v. Konwenhoven*, 100 N.Y. 115, 118, 2 N.E. 637, 638 (1885)). The faithless servant doctrine establishes that "an agent is obligated 'to be loyal to his employer and is "prohibited from acting in any manner inconsistent with his agency or trust and is at all times bound to exercise the utmost good faith and loyalty in the performance of his duties."'" *Id.* at 200 (quoting *Western Elec. Co. v. Brenner*, 41 N.Y.2d 291, 295, 392 N.Y.S.2d 409, 360 N.E.2d 1091 (1977) (quoting *Lamdin v. Broadway Surface Adver. Corp.*, 272 N.Y. 133, 138 (1936))). While New York courts have enunciated two standards to determine whether an employee's misconduct rises to the faithless servant level—one requiring that the disloyalty "permeate[] the employee's service in its most material and substantial part" and the other requiring "a breach of a duty of loyalty or good faith"—the courts "have not reconciled any differences between them, or defined the circumstances, if any, in which one standard should apply rather than the other." *Id.* at 201-02 (citations and quotations omitted).

Importantly, courts applying the faithless servant doctrine have held that "[o]ne who owes a duty of fidelity to a principal and who is faithless in the performance of his services *is generally disentitled to recover his compensation*, whether commissions or salary." *Id.* (quoting *Feiger v. Iral Jewelry, Ltd.,* 41 N.Y.2d 928, 928 (1977) (emphasis added)). As such, if an employee is found to be a "faithless servant," New York law normally requires that the employee "forfeit[ all] compensation paid during the time period of disloyalty." *Id.* at 205.

### 4.  The Faithless Servant Doctrine Is an Obstacle to the Accomplishment of the FLSA's Objectives

Pitted against each other then, are (1) the FLSA—a federal statute that specifically requires the payment of hourly minimum and overtime wages to covered workers and makes no exception to this requirement based on an employee's misconduct,[5] and (2) a state common law doctrine that requires the forfeiture and return to the employer of those very same wages where there is a finding of "faithlessness" based on an employee's misconduct.  The two laws stand in direct conflict and cannot be reconciled.

The faithless servant doctrine and its wage-forfeiture remedy present serious obstacles to the accomplishment and execution of the FLSA's objectives.  Congress passed the FLSA with the goal of providing specific basic protections to workers in the form of minimum and overtime wages to ensure "minimum standard[s] of living necessary for health, efficiency, and general well-being of workers." 29 U.S.C. § 202.  The faithless servant doctrine flatly contradicts these objectives by requiring the forfeiture of those same wages upon a showing of worker misconduct—a principle found nowhere in the FLSA.  Permitting faithless servant claims in the context of an FLSA action on behalf of low-wage workers thus erodes the basic worker protections that are the objective of the federal law.

The conflict comes into clearer focus when one considers Supreme Court precedent establishing that an employee may not waive the right to the minimum compensation guaranteed by the FLSA by, for example, agreeing through contract to

---

[5] Congress has identified specific exemptions to the minimum and overtime wage requirements, 29 U.S.C. § 213, and specific deductions that an employer may claim against a covered worker's wages, 29 U.S.C. § 203(m).  A worker's misconduct or malfeasance, however, is not the basis for any of these exemptions or deductions.  The preemption argument Plaintiffs raise applies to workers covered by the FLSA's minimum and overtime wage requirements and does not extend to workers who are exempt from the provisions of the FLSA pursuant to 29 U.S.C. § 213.

receive a lower wage.  *See Jewell Ridge Coal Corp. v. Local No. 6167, United Mine Workers of Am.*, 325 U.S. 161, 167 (1945) ("Congress intended . . . to achieve a uniform national policy of guaranteeing compensation for all work or employment engaged in by employees covered by the [FLSA]. Any custom or contract falling short of that basic policy, like an agreement to pay less than the minimum wage requirements, cannot be utilized to deprive employees of their statutory rights."); *Barrentine*, 450 U.S. at 740 ("[W]e have held that FLSA rights cannot be abridged by contract or otherwise waived because this would 'nullify the purposes' of the statute and thwart the legislative policies it was designed to effectuate.") (quotations omitted).  In this regard, the FLSA disrupts normal contract law principles by setting a floor beyond which an employer and employee may not negotiate with respect to wage payments. If the FLSA preempts the application of standard contract law principles by prohibiting parties from negotiating below the minimum wage floor, it follows that the FLSA preempts in like measure the application of a common law agency principle that requires the complete forfeiture of those same wages on a finding of employee misconduct.

Consider the dilemma presented under the following scenario if the Court were to find otherwise: An FLSA-covered worker who has engaged in repeated acts of misconduct for a period of five months repents and admits his misconduct to his employer.  The worker and the employer agree that, to account for the misconduct, the worker will continue to provide his labor but will forfeit his right to compensation for the next five months.  *Barrentine* and other Supreme Court precedent would prohibit this contract between the worker and employer for the forfeiture of wages.  However, were the employer to instead bring a faithless servant claim against the worker seeking the forfeiture of five-months' worth of wages based on the misconduct, the same forfeiture of wages, which the parties were prohibited from contracting for under the FLSA, would

17

be mandated by application of the state common law doctrine.  The two results cannot be squared.

The obstacle to congressional objectives presented by the faithless servant doctrine is also visible when considering Congress's concern in passing the FLSA of correcting "the unequal bargaining power as between employer and employee." *Brooklyn Sav. Bank*, 324 U.S. at 706. An employer who prevails on its faithless servant counterclaim in a wage-and-hour action brought by minimum wage workers would not only avoid compensating its employees for unlawfully withheld wages, but also eliminate its obligation to pay employees the minimum wages mandated by federal (and state) statute *altogether* during any determined "period of disloyalty."[6]  If such counterclaims are permitted to advance, courts may expect employers to regularly allege that employee misconduct provides a basis for a finding that its minimum wage employees must forfeit and return wages guaranteed to its employees by federal statute.  Far from correcting for unequal bargaining power, the unequal leverage as between employer and employee in actions on behalf of low-wage workers would be further exacerbated under these circumstances.

Because the faithless servant doctrine and its wage-forfeiture remedy directly conflict with the FLSA's guarantee of minimum and overtime wages and present a serious obstacle to the accomplishment of the FLSA's purposes and objectives, the faithless servant doctrine as applied to non-exempt workers is preempted by the FLSA. An employer required by federal law to compensate covered workers with minimum and overtime wages necessary to maintain minimum standards of living and combat the "evil of overwork and underpay" may not seek to eliminate this obligation through reliance

---

[6] In this regard, the faithless servant doctrine conflicts in equal measure with the NYLL's guarantee of minimum and overtimes wages to covered workers.

on the drastic wage-forfeiture remedies provided by a state common law doctrine upon a finding of worker misconduct.   Conflict preemption principles establish that the faithless servant doctrine must give way to federal legislation under these circumstances.

Accordingly, for all of the reasons discussed above, the Court should find that Defendants' faithless servant counterclaims against Plaintiffs are preempted by the FLSA.

## B. The Facts of this Case Do Not Support Application of the Faithless Servant Doctrine

Even if the Court does not find that Defendants' faithless servant counterclaims are preempted by the FLSA, the facts of the instant case still do not support application of the faithless servant doctrine.

Defendants point to no analogous case where summary judgment was granted on a faithless servant claim brought against a low-wage employee who committed minor acts of misconduct.  *Phansalkar*, which Defendants cite generally to describe the contours of the faithless servant doctrine, involved an action by a merchant banking firm against an investment banker.  *Phansalkar v. Andersen Weinroth & Co., L.P.*, 344 F.3d 184, 187, 203 (2d Cir. 2003) (investment banker was a "faithless servant" where he, *inter alia*, withheld "cash, stocks, and other interests that belonged to [his firm] and that should have been turned over to the firm" and violated his "affirmative duty" to provide the firm with "Directors' Compensation he received on [the firm's] behalf").  *Sanders*, also cited to describe the elements of a faithless servant claim, involved a dispute between Madison Square Garden and the Vice President of Marketing for the New York Knickerbockers. *Sanders v. Madison Square Garden, L.P.*, 06-cv-589 (GEL), 2007 WL 1933933, at *1, 6 (S.D.N.Y. July 2, 2007) (rejecting application of the faithless servant doctrine where MSG failed to show that the Vice President "undermine[d] or covertly compete[d] with her

19

employer" in a manner that would justify forfeiture of "the benefits of an agency relationship she has betrayed").

In fact, courts have looked unfavorably on faithless servant claims directed at low-wage employees in cases involving minor misconduct.  For example, in *Doe v. Solera Capital LLC*, 18-cv-1769 (ER), 2019 WL 1437520 (S.D.N.Y. Mar. 31, 2019), the defendant employers brought faithless servant counterclaims against an executive assistant based on allegations that she abused access to work and personnel files and improperly made purchases for personal items on company credit cards. *Id.* at *2.  Analyzing these claims, Judge Ramos held that "the faithless servant doctrine doesn't apply on the facts of this case because Defendants have not cited, and the Court has not found, a case where the doctrine was applied to the type of garden-variety, petty pilfering by an employee as alleged here." *Id.* at *10.  Judge Ramos found further support for his rejection of the faithless servant counterclaims in *Torres v. Gristede's Operating Corp.*, 628 F. Supp. 2d 447 (S.D.N.Y. 2008).  There, the court tossed an employer's faithless servant counterclaims based on employee's alleged sexual harassment and misuse of a customer credit card. *Id.* at 471 ("Nor can it be, as Gristede's apparently supposes, that every routine termination for sexual harassment or credit card fraud necessarily raises faithless servant claims.").

The Court should similarly find that Defendants have failed to make out a cognizable faithless servant claim on the facts of this case.  While Mirkov has acknowledged his misconduct in altering customer tips,[7] his behavior is just the sort of garden-variety malfeasance by a low-wage worker that fails to provide grounds for a faithless servant claim.  As the court noted in *Solera*, this type of misconduct simply does not implicate a breach of the duty of loyalty required for a faithless servant finding. *See*

---

[7] Only Mirkov, and no other Plaintiff, has acknowledged that he engaged in this misconduct.

*Solera*, 2019 WL 1437520, at *10 (noting that "the duty of loyalty has been limited to cases where the employee, acting as the agent of the employer, unfairly competes with his employer, diverts business opportunities to himself or others to the financial detriment of the employer, or accepts improper kickbacks.") (quoting *Grewal v. Cuneo*, 13-cv-6836 (RA), 2016 WL 308803, at *7 (S.D.N.Y. Jan. 25, 2016) (internal quotation omitted)). Accordingly, Plaintiffs' cross-motion for summary judgment on Defendants' faithless servant counterclaims should be granted.

### C. Material Issues of Fact Exist with Respect to Defendants' Faithless Servant Claim Against Mirkov

If the Court does not grant Plaintiffs' cross-motion for summary judgment on Defendants' faithless servant counterclaims, it should still deny Defendants' motion with respect to its faithless servant claim against Mirkov because there is a dispute of fact regarding the appropriate identification of Mirkov's alleged "period of disloyalty" and corresponding wages paid. Defendants contend that they are entitled to recover all wages paid to Mirkov from October 15, 2016 through the April 2018 date of his termination. But Defendants make no attempt to identify an alleged last instance on which Mirkov altered tips. Instead, they mark the end of his "period of disloyalty" as the date of Mirkov's firing. (Defs.' St. at ¶ 15).

The record evidence in this case demonstrates that Defendants became aware of Mirkov's misconduct following a Yelp review in December 2017. (Defs.' St. at ¶ 12). Mirkov testified during his deposition that he did not alter a tip again after Andreas Matischak called the issue to Mirkov's attention. (Mirkov Dep., ECF No. 51-2 at 56:24-57:3). Accordingly, the date of the last instance of Mirkov's misconduct has not been identified and is disputed, and Defendants have not cited any undisputed fact to establish that the misconduct continued through the date of Mirkov's termination. Accordingly,

assuming that Defendants' faithless servant claims are not dismissed outright (as they should be), Defendants' motion must be denied because there is a material dispute as to Mirkov's alleged "period of disloyalty."

## CONCLUSION

For the reasons set forth above, the Court should: (1) deny Defendants' motion for summary judgment on Plaintiffs' overtime claims (Claims III and IV); (2) grant Plaintiffs' cross-motion for summary judgment on their wage statement claims (Claim VIII); (3) grant Plaintiffs' motion for summary judgment on their wage notice (Claim VII) and spread-of-hours claims (Claim V); and (4) grant Plaintiffs' motion for summary judgment on Defendants' faithless servant counterclaims or, in the alternative, deny Defendants' motion for summary judgment on their faithless servant counterclaim with respect to Mirkov.

Dated:  New York, New York
        February 5, 2021

PECHMAN LAW GROUP PLLC

By:   */s/ Galen C. Baynes*
       Louis Pechman
       Galen C. Baynes
       488 Madison Avenue, 17th Floor
       New York, New York 10022
       Tel: (212) 583-9500
       pechman@pechmanlaw.com
       baynes@pechmanlaw.com
       *Attorneys for Plaintiffs*