UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------x

ANDJELA STEFANOVIC, UROS DUKIC,
BOJANA NOVAKOVIC, DANIJEL
MIRKOV,

                        Plaintiffs,

  -v-                                                            No. 18-CV-2093-LTS-JEW

OLD HEIDELBERG CORP. d/b/a
HEIDELBERG RESTAURANT, EVA
MATISCHAK,

                        Defendants.
-----------------------------------------------------------x

MEMORANDUM OPINION AND ORDER

In this action, Plaintiffs Andjela Stefanovic ("Stefanovic"), Uros Dukic ("Dukic"), Bojana Novakovic ("Novakovic"), and Danijel Mirkov ("Mirkov") (collectively, "Plaintiffs") assert claims for violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. sections 201 et seq., and the New York State Labor Law ("NYLL") sections 190, 650 et seq., that allegedly occurred from March 2016 through April 2018. (Docket entry no. 12 (the "First Amended Complaint" or "FAC").) Old Heidelberg Corp. (the "Restaurant") and Eva Matischak (together, "Defendants") answered Plaintiffs' complaint, asserted several affirmative defenses, and asserted a counterclaim (the "Counterclaim"), alleging misconduct by Plaintiff Mirkov and invoking New York's common law faithless servant doctrine.[1] (Docket entry no. 15.) The Court has jurisdiction of Plaintiffs' claims under the FLSA pursuant to 28 U.S.C. section 1331, and of their claims under the NYLL and the Counterclaim pursuant to 28 U.S.C. section 1367.

---

[1]     The Court dismissed Defendants' counterclaim under the faithless servant doctrine as against Plaintiffs Stefanovic, Dukic, and Novakovic on August 8, 2019. (Docket entry no. 26.)

Defendants now move for partial summary judgment as to Plaintiffs' claims for unpaid overtime under the FLSA ("Count Three") and the NYLL ("Count Four"), and as to Plaintiffs' claim for failure to pay "spread-of-hours" wages ("Count Five") and provide accurate wage statements at time of payment ("Count Eight"), as required under the NYLL. (Docket entry nos. 49, 50 ("Defs. Mem.").) Defendants also move for summary judgment as to the Counterclaim (id.), and as to all claims under the FLSA arising from Plaintiff Novakovic's employment prior to March 7, 2015. (Id.) Plaintiffs concede that Defendants are entitled to summary judgment as to all FLSA claims arising prior to March 7, 2015, but otherwise oppose Defendants' motion in its entirety, and cross-move for summary judgment, against the Restaurant only, as to Counts Five and Eight, as to Plaintiffs' NYLL-based claim that Defendants failed to provide accurate wage notices at time of hire ("Count Seven"), and as to the Counterclaim.[2] (Docket entry nos. 55, 56 ("Pls. Mem.").)

The Court has considered the submissions of both parties carefully and, for the following reasons, grants Plaintiffs' motion in its entirety. The Court grants Defendants' motion only as to any FLSA claims prior to March 7, 2015, and otherwise denies Defendants' motion in its entirety.

---

[2] Plaintiffs concede that they have not sought to demonstrate that Defendant Eva Matischak was an "employer" under the FLSA or NYLL for purposes of summary judgment, and that their summary judgment motion therefore pertains only to the Restaurant. (Docket entry no. 65 at 1 ("Plaintiffs agree that the liability of individual defendant Eva Matischak as Plaintiffs' employer has not been established for purposes of the [m]otions [for summary judgment] . . . all affirmative relief sought by Plaintiffs in their [m]otion is with respect to corporate defendant [the Restaurant] alone.").)

BACKGROUND

Unless otherwise indicated, the following facts are undisputed.[3] Each Plaintiff is a former employee of the Restaurant. Stefanovic was employed by the Restaurant from October 31, 2016, to November 5, 2017. (Docket entry no. 59 ("Pls. 56.1 St.") ¶ 1.) Dukic was employed by the Restaurant as a "server/bartender" from August of 2016 to October of 2017. (Docket entry no. 51 ("Defs. 56.1 St.") ¶ 23.) Mirkov was employed by the Restaurant as a bartender from "March or April of 2016" to "in or around April of 2018." (Defs. 56.1 St. ¶¶ 7, 15.) Novakovic was employed by the Restaurant as a "hostess/bartender/server" from "March or April of 2012" to October of 2014, and again from Oct. 2, 2016, to December 5, 2017. (Docket entry no. 58-3, Ex. C at 32-42.) When all four Plaintiffs began their employment at the Restaurant, they were provided with a form labeled "Notice and Acknowledgment of Pay Rate and Payday" (the "Wage Notices"), (Pls. 56.1 St. ¶¶ 2, 14, 26, 38; docket entry no. 58, at Ex. E), on which a box was checked indicating that no allowances were to be taken against their wages.[4] (Pls. 56.1 St. ¶¶ 4, 16, 28, 40.) On each Wage Notice, a box indicating that a tip credit allowance would be taken from Plaintiffs' wages was also left unchecked. (Id. ¶¶ 5, 17, 29, 41.) Despite this, the Restaurant took a tip credit against Plaintiffs' minimum and overtime wages, and all four were regularly paid at "tipped regular wage rate[s]" of $7.50 per hour for hours worked up to forty per workweek, and a "tipped overtime wage rate" of $12.00 (in 2016) or $13.00 (in 2017) for hours worked in excess of forty per workweek. (Id. ¶¶ 6, 18, 30, 42.) Each Plaintiff,

---

[3]   Facts characterized as undisputed are identified as such in Defendants' or Plaintiffs' statements pursuant to SDNY Local Civil Rule 56.1 (docket entry nos. 51, 59, 64) or drawn from evidence to which there has been no contrary, non-conclusory factual proffer.

[4]   The wage notice for which Plaintiff Novakovic brings a wage notice claim in this action relates to her second period of employment at the Restaurant and is dated October 2, 2016. (Pls. 56.1 St. ¶ 14.)

on at least two occasions, worked a shift in excess of ten hours, known as a "spread-of-hours shift," but was not paid an extra hour's minimum wage.  (Id. ¶¶ 11-12, 23-24, 35-36, 47-48.) The Restaurant provided wage statements (the "Wage Statements") to Plaintiffs that were inaccurate, in that they rounded down the total hours the individual Plaintiff had worked in a given workweek.  (Id. ¶¶ 10, 22, 34, 46.)  As an example, Stefanovic worked 34.74 hours between July 10 and July 16, 2017, but the corresponding Wage Statement she received indicated she had worked only 34 hours.  (Id. ¶ 10.)  In addition, the Wage Statements received by each Plaintiff "did not indicate the per-hour tip credit amount taken as an allowance or the total weekly amount of the tip credit allowance."  (Id. ¶¶ 7, 19, 30, 43.)  In depositions, Plaintiffs were unable to recall from memory the exact dates or pay periods when they were underpaid because of these inaccuracies.  (Defs. 56.1 St. ¶¶ 5, 17, 21, 24.)  However, Plaintiffs have proffered extensive payroll records as to each individual Plaintiff in support of their claims.  (Docket entry no. 58, Exs. A-I)

        Beginning on October 15, 2016, Plaintiff Mirkov began a practice of "overcharging customers of the Restaurant by entering a tip amount into the Restaurant's point-of-sale system that was higher than the amount of the tip that the customer had indicated on their receipt." (Defs. 56.1 St. ¶¶ 8-9; docket entry no. 57 ¶ 9.)  Over the next two years, Mirkov altered tips from customers in the same fashion approximately twelve times.  (Id. ¶ 10.) Mirkov's practice of altering customers' tips caused the Restaurant to receive a poor review on Yelp, a restaurant review website, on December 14, 2017.  (Id. ¶ 12.)  Following an internal investigation, the Restaurant discovered Mirkov's practice of altering tips, and he was fired "in or around April of 2018."  (Id. 15.)

DISCUSSION

Summary judgment is to be granted in favor of a moving party if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is considered material if it "might affect the outcome of the suit under the governing law," and an issue of fact is a genuine one where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Holtz v. Rockefeller & Co. Inc., 258 F.3d 62, 69 (2d Cir. 2001) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). To defeat a summary judgment motion, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Caladora v. Calabrese, 298 F.3d 156, 160 (2d Cir. 2002) (citation omitted). The nonmoving party "may not rely on mere conclusory allegations nor speculation, but instead must offer some hard evidence showing that its version of the events is not wholly fanciful." Golden Pac. Bancorp v. FDIC, 375 F.3d 196, 200 (2d Cir. 2004) (citation omitted).

The same legal standards apply when analyzing cross-motions for summary judgment. Schultz v. Stoner, 308 F. Supp. 2d 289, 298 (S.D.N.Y. 2004). "[E]ach party's motion must be examined on its own merits, and in each case all reasonable inferences must be drawn against the party whose motion is under consideration." Morales v. Quintel Entm't, Inc., 249 F.3d 115, 121 (2d Cir. 2001) (citation omitted).

Unpaid Overtime Claims under the FLSA (Count Three) and NYLL (Count Four)

Defendants move for summary judgment as to Plaintiffs' claims for unpaid overtime under the FLSA and the NYLL, arguing that Plaintiffs have not provided competent evidence that they were underpaid. (See Defs. Mem. at 9 ("Defendants are entitled to judgment on Plaintiffs' claims for unpaid overtime as Plaintiffs have no evidence to support their claims

that they were not paid for all of the hours that they worked.").)  The Court disagrees and declines to grant summary judgment on that basis.

"Both the FLSA and the NYLL mandate an overtime rate of one and one-half times the employee's 'regular rate of pay.'"  Perez Garcia v. Hirakegoma Inc., No. 17-CV-7608-SLC, 2020 WL 1130765, at *6 (S.D.N.Y. Mar. 9, 2020) (citing 29 U.S.C. § 207; 12 N.Y.C.R.R. § 142-2.2).  "To establish liability under the FLSA [or NYLL] on a claim for unpaid overtime, a plaintiff must prove that he performed work for which he was not properly compensated, and that the employer had actual or constructive knowledge of that work."  Kuebel v. Black & Decker Inc., 643 F.3d 352, 361 (2d Cir. 2011) (citation omitted).  "At summary judgment, a plaintiff must support his burden by first producing sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference."  Velazquez v. Yoh Services, LLC, No. 17-CV-842-CM, 2019 WL 1448716, at *8 (S.D.N.Y. Mar. 15, 2019) (quoting Kuebel, 643 F.3d at 361) (alterations omitted).  "When the employer has kept proper and accurate records, the employee may easily discharge his burden by securing production of those records."  Shi v. TL & GC Inc., 19-CV-08502-SN, 2022 WL 2669156, at *6 (S.D.N.Y. Jul 11, 2022) (quoting Anderson v. Mt. Clemens Pottery Co., 328 U.S. 680, 687 (1946)) (alterations omitted).  "If an employee's records are inaccurate or inadequate, 'it is well settled . . . that it is possible for a plaintiff to meet this burden through estimates based on [his or her] own recollection."  Velazquez, 2019 WL 1448716, at *8 (quoting Kuebel, 643 F.3d at 372).  "This burden is not onerous."  Id. (quotation omitted).  Once this burden is met, "[t]he burden then shifts to the employer to come forward with evidence either to show 'the precise amount of work performed,' or to 'negat[e] the reasonableness of the inference to be drawn from the employee's evidence.'"

Gonzalez v. Masters Health Food Service Inc., No. 14-CV-07603, 2017 WL 3835960, at *16 (S.D.N.Y. Jul. 27, 2017) (quoting Kuebel, 643 F.3d at 352).

Here, Plaintiffs have presented payroll records in the form of pay stubs that specify, for each individual Plaintiff, the number of hours worked by that Plaintiff in a given week and their rates of non-overtime and overtime pay.  (Docket entry no. 58, at Exs. F-I). Plaintiffs have also provided "batch time records" which can be cross-referenced with Plaintiffs' pay stubs, and which provide, inter alia, each Plaintiff's dates worked, hours worked on each day, time in and time out, and amounts received in tips. (See docket entry no. 59, at Ex. E.)  For instances in which Plaintiffs believe the payroll records to be inaccurate (for example, shifts where Plaintiffs allege hours were rounded down by Defendants), Plaintiffs have used the batch time records to demonstrate the scope of such inaccuracies.  (See, e.g., Pls. 56.1 St. ¶ 46(a) (alleging underpayment of Plaintiff Mirkov, where Mirkov's pay stub for a given week indicated that he worked 29 hours, but his batch time records indicated he worked 29.84 hours).)  The quality and volume of this evidence clearly satisfies Plaintiff's initial burden of producing "sufficient evidence from which violations of the [FLSA or NYLL] and the amount of an award may be reasonably inferred."  Reich v. S. New England Telecomms. Corp., 121 F. 3d 58, 66 (2d Cir. 1997) (citation and quotation omitted).  The burden of challenging this evidence therefore shifts to Defendants, who failed, in their papers, to address this evidence directly or attack the reasonableness of any inference which may be drawn from it.

The Court therefore finds that Plaintiffs have provided sufficient and competent evidence in support of their claims for unpaid overtime under both the FLSA and the NYLL, such that both claims survive summary judgment.  Accordingly, Defendants' motion is denied as to Counts Three and Four.

Spread-Of-Hours Claim (Count Five)

Plaintiffs move for summary judgment, as to liability only, on their claims for violations of the NYLL's "spread-of-hours" requirement. The NYLL provides that employees must receive one additional hour of pay at the basic minimum hourly rate for each day that their spread-of-hours exceeds ten. 12 N.Y.C.R.R. § 146-1.6(a). The spread-of-hours is the "length of the interval between the beginning and end of an employee's workday." Id. Defendants do not dispute that each Plaintiff, on at least two occasions, worked more ten hours in a single shift and did not receive an additional hour's pay at the minimum wage. (Pls. 56.1 St. ¶¶ 11-12, 23-24, 35-36, 47-48.) Accordingly, Plaintiffs have established the Restaurant's liability for spread-of-hours violations as a matter of law.

Defendants argue that summary judgment should be denied as to Plaintiffs' spread-of-hours claims on the grounds that "Defendants attempted to, in good faith, abide by the [NYLL]." (Docket entry no. 62 ("Defs. Reply") at 13.) However, as Plaintiffs note, "good faith measures to comply with [the NYLL] may serve as an affirmative defense to a claim for liquidated damages – an issue on which Plaintiffs have not moved." (Docket entry no. 65 ("Pls. Reply") at 3) (emphasis removed); see also NYLL § 663(1) (McKinney 2022) ("If any employee is paid by his or her employer less than the wage to which he or she is entitled . . . he or she shall recover in a civil action the amount of any such underpayments . . . and unless the employer proves a good faith basis to believe that its underpayment of wages was in compliance with the law, an additional amount as liquidated damages equal to one hundred percent of the total of such underpayments found to be due."). As good faith is an affirmative defense to liquidated damages only, Defendants' assertion does not alter the Court's analysis of the Restaurant's liability for spread-of-hours violations. Because Plaintiffs have established the Restaurant's

liability for spread-of-hours violations, as to all Plaintiffs, as a matter of law, the Court grants Plaintiffs' motion for summary judgment against the Restaurant as to Count Five.

Claims Under the Wage Theft Prevention Act (Counts Seven and Eight)

Plaintiffs and Defendants cross-move for summary judgment with respect to Plaintiffs' claims arising under New York's Wage Theft Prevention Act ("WTPA"), an amendment to the NYLL that became effective on April 9, 2010.  See 2010 N.Y. Sess. Laws ch. 564 (McKinney).  Plaintiffs' first such set of claims arises under NYLL section 195(1), which requires employers to "provide [their] employees, in writing, . . . at the time of hiring . . . notice containing . . . the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; [and] *allowances, if any, claimed as part of the minimum wage . . . .*" NYLL § 195(1) (McKinney 2022) (emphasis added).  Pursuant to a 2014 amendment to the WTPA, an employer who either fails to provide such notices at the time of hiring, or provides notices that are noncompliant with the WTPA, is liable to the employee for a maximum of $5,000, accruing at a rate of $50 for each day not received.  NYLL § 198(1-b); see Adonias v. Al Horno Lean Mexican Kitchen Inc., No. 16-CV-07266-LTS-KHP, 2018 WL 4007643, at *10 (S.D.N.Y. Aug. 22, 2018).

Defendants do not dispute that the Restaurant failed to check the box on the Wage Notices indicating that a tip credit allowance would be taken against each Plaintiff's wages.  (Pls. 56.1 St. ¶¶ 5, 17, 29, 41.)  Instead, the Restaurant "checked the box on the wage notice indicating that no allowances were taken against [each Plaintiff]'s wage rates." (Pls. 56.1 St. ¶¶ 4, 16, 28, 40.)  As prior courts have noted, failing to provide notice of the future taking of a tip credit on an employee's wage notice "is a clear violation of § 195(1)." Saigon Market, 2019 WL 4640260, at *5 (finding an employer which had taken a tip credit against an employee's wages liable under

section 195(1) for checking, next to the question written on that employee's wage notice of whether any allowances would be taken, the box labeled "none").

In their opposition to Plaintiffs' motion, Defendants appear to concede that the Wage Notices supplied to Plaintiffs at time of hiring were deficient, and they invoke the affirmative defense of good faith efforts to abide by the NYLL. (Defs. Reply at 13.) The NYLL addresses affirmative defenses to violations of section 195(1) as follows:

> In any action or administrative proceeding to recover damages for violation of paragraph (a) of subdivision one of section one hundred ninety-five of this article, it shall be an affirmative defense that (i) the employer made complete and timely payment of all wages due pursuant to this article or article nineteen or article nineteen-A of this chapter to the employee who was not provided notice as required by subdivision one of section one hundred ninety-five of this article or (ii) the employer reasonably believed in good faith that it was not required to provide the employee with notice pursuant to subdivision one of section one hundred ninety-five of this article.

NYLL § 198(1-b) (McKinney 2022).

The burden of demonstrating good faith under either the FLSA or NYLL is heavy, and it falls upon the employer. "To establish the requisite subjective 'good faith,' an employer must show that it took 'active steps to ascertain the dictates of the FLSA [or NYLL] and then act[ed] to comply with them.'" Barfield v. New York City Health and Hospitals Corp., 537 F.3d 132, 150 (2d Cir. 2008) (quoting Herman v. RSR Sec. Servs. Ltd., 172 F.3d 132, 142 (2d Cir. 1999)); see also Inclan v. New York Hospitality Group, 95 F. Supp. 3d 490, 505 (S.D.N.Y. 2015) (noting that "courts have not substantively distinguished the federal standard [under the FLSA] from the current state standard [under the NYLL] of good faith"). "The Second Circuit has observed that the employer's burden is a difficult one, and has emphasized that double damages [resulting from no finding of good faith] are the norm and single damages [resulting from a finding of good faith] the exception." Chichinadze v. BG Bar Inc., 517 F. Supp. 3d 240,

258 (S.D.N.Y. 2021) (quoting Barfield, 537 F.3d at 150) (internal quotation marks and alterations omitted).  Indeed, the Defendants do not provide, and the Court has not found, a single case in which a good faith defense was successfully used to avoid liability for the wage notice provision of NYLL section 195.

In support of their good faith defense, Defendants allege, and Plaintiffs do not dispute, the following:

> The Restaurant's manager, Andreas Matischak[,] had conversations, generally, once a year with his payroll company ADP, about compliance with employment laws. The Restaurant also hired a woman named Angela Hour to prepare payroll. Eva Matischak, the Restaurant's owner[,] also hired someone named Diana Klapach to ensure compliance with employment laws, which included meetings with accountants and attorneys, and that handled payroll before Angela was hired. ADP told the Restaurant what was mandated in terms of employee pay and the Restaurant did what ADP said.

(Defs. Reply at 13) (internal citations to record omitted).

The Court finds that, as a matter of law, Defendants have failed to satisfy their burden.  In Chichinadze, the court found that merely relying on a payroll company (incidentally, the company in that matter was also ADP) "plainly does not qualify as an active step to ascertain the dictates of the law and then act to comply with them."  517 F. Supp. 3d at 258 (citation and internal alterations omitted); see also Dudley v. Hanzon Homecare Services, Inc., No. 15-CV-8821-JMF, 2018 WL 481884, at *5 (S.D.N.Y. Jan. 17, 2018) (finding that employer had not met her burden of demonstrating good faith where she claimed that she used a "payroll service provider" and "believed that [the provider] would have notified" her if she was not in compliance with employment laws"); cf. Khereed v. West 12th Street Restaurant Group LLC, No. 15-CV-1363-PKC, 2016 WL 590233, *6-7 (S.D.N.Y. Feb. 11, 2016) (finding good faith burden met as to unpaid wages, for purposes of defeating summary judgment, when employer

"retained counsel to advise him on wage-and-hours laws" and "an attorney reviewed the contents of his employee handbook"). Defendants say that their manager "generally" had conversations with the payroll company ADP, and "did what ADP said." Passively following the dictates of a payroll company does not constitute an "active step to ascertain the dictates of the law and then act to comply with them." Dudley at *5 (quoting Barfield, 137 F.3d at 150). Defendants' other proffers, that they hired "a woman named Angela Hour to prepare payroll" and "someone named Diana Klapach to ensure compliance with employment laws," without more, are far too vague to frame a genuine issue of fact as to good faith, even under the favorable standard afforded to nonmovants at summary judgment. See Saigon Market, 2019 WL 4640260, at *12 (granting summary judgment despite defendants' invocation of good faith defense when defendant "only provided vague and imprecise testimony that she had hired a payroll company who would answer her payroll questions and 'tell [her] what to do'"). For these reasons, the Court finds that no reasonable jury could find that the Restaurant acted in good faith when it failed to comply with the wage notice provision.

As it is undisputed that each Plaintiff worked for at least one hundred days following their receipt of the deficient Wage Notices considered in this section (Pls. 56.1 St. ¶ 50), the Court finds that each Plaintiff is entitled to $5,000 in wage notice statutory damages pursuant to NYLL section 198(1-b).

Plaintiffs' second set of claims under the WTPA arises under NYLL section 195(3), which requires employers to "furnish each employee with a statement with every payment of wages, listing . . . rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, shift, piece, commission, or other; gross wages; deductions; [and] *allowances, if any claimed as part of the minimum wage . . . .*" NYLL § 195(3) (McKinney 2022); see also

Saigon Market, 2019 WL 4640260, at *3 ("The WTPA also requires employers to provide their employees a 'statement with every payment of wages, listing information about the rate and basis of pay, any allowances and deductions, and the employer's identity and contact details.'") (quoting Canelas v. A'Mangiare, Inc., No. 13-CV-3630-VSB, 2015 WL 2330476, at *5 (S.D.N.Y. May 14, 2015)) (citing NYLL § 195(3)). Following the 2014 amendment to the WTPA, an employer who fails to provide the required wage statement is liable to the employee for $250 "for each workday that the violations occurred or continue to occur, but not to exceed a total of five thousand dollars." NYLL § 198(1-d).

Defendants move for summary judgment, arguing that "all of the plaintiffs have testified that they received the requisite wage statements required by the NYLL." (Defs. Mem. at 11; Pls. 56.1 St. ¶¶ 2, 14, 26, 38.) In their cross-motion and opposition, Plaintiffs contend that the Wage Statements were deficient:

> The wage statements Defendants provided to Plaintiffs were deficient in three respects: (1) they did not report spread-of-hours pay to which Plaintiffs were entitled; (2) they did not accurately list total hours Plaintiffs worked; and (3) they did not appropriately reflect the tip credit (i.e., allowance) Defendants took against Plaintiffs' wages.

(Pls. Mem. at 7.) Defendants do not dispute that the Wage Statements did not indicate that the Restaurant was taking a tip credit against Plaintiffs' wages, or the total amount of tips taken. (Pls. 56.1 St. ¶¶ 7, 19, 31, 43.) Nor do Defendants dispute that, on at least two occasions for each Plaintiff, Defendants rounded down the number of hours worked for purposes of calculating compensation. (Pls. 56.1 ¶¶ 8, 20, 32, 44.) Previous courts have found that either of these violations is, on its own, sufficient to establish liability for a wage statement violation. See Chichinadze, 517 F. Supp. 3d at 259 (wage statements listing incorrect number of hours worked); Salinas v. Starjem Restaurant Corp., 123 F. Supp. 3d 442, 475 (S.D.N.Y. 2015) (wage

statements failing to indicate that employer was taking tip credit allowance).[5]  Defendants assert good faith as an affirmative defense, but the Court finds that defense unavailing for the reasons stated above.  See supra at 12.  The Court therefore grants Plaintiffs' motion for summary judgment against the Restaurant as to Count Eight, and finds the Restaurant liable to each Plaintiff for violations of NYLL section 195(3).  Defendants' motion for summary judgment as to Count Eight is denied.

As it is undisputed that all Plaintiffs worked for at least twenty days while these violations "occurred or continued to occur," see NYLL § 198(1-d), the Court finds that each Plaintiff is entitled to wage statement statutory damages in the amount of $5,000.

Faithless Servant Counterclaim

Plaintiffs and Defendants cross-move for summary judgment as to the Counterclaim against Plaintiff Mirkov.  The Counterclaim against Mirkov alleges a breach of fiduciary duty under New York's faithless servant doctrine.  Under New York law, "[o]ne who owes a duty of fidelity to a principal and who is faithless in the performance of his services is

---

[5]  Defendants argue that, "while the Plaintiffs point to certain instances . . . where the Defendants purportedly rounded hours down, the Plaintiffs fail to point to other instances where the Defendants actually rounded up in paying Plaintiffs."  (Defs. Reply at 13) (citing to a week in which Stefanovic's batch time record indicates 31.89 hours worked, and her pay stub indicates payment for 32 hours).  This argument does not alter the Court's analysis, because it does not support an inference that a reasonable jury could find that the Wage Statements accurately recorded the number of hours actually worked and that Plaintiffs were paid according to that number of hours.  See Campos v. BKUK, No. 18-CV-4036-JGK-KHP, 2021 WL 3540243, at *10 (S.D.N.Y. Aug. 10, 2021) (awarding damages at summary judgment for wage statement violations where, "when paystubs were received, they were not accurate insofar as they did not accurately reflect the hours actually worked"), report and recommendation adopted, 2021 WL 3863198 (S.D.N.Y. Aug. 30, 2021); see also Pierre v. Hajar, No. 15-CV-02772-ENV-RLM, 2018 WL 2393158, at *6 (E.D.N.Y. Mar. 28, 2018) (noting that, in interpreting section 195(3), "[c]ourts in this district have held that the furnishing of accurate information is the legislative objective") (citation omitted).

generally disentitled to recover his compensation, whether commissions or salary." Phansalkar v. Andersen Weinroth & Co., 344 F.3d 184, 200 (2d Cir. 2003) (citation omitted). In New York, courts "continue to apply two alternative standards for determining whether an employee's conduct warrants forfeiture under the faithless servant doctrine." Carco Grp., Inc. v. Maconachy, 383 F. App'x 73, 76 (2d Cir. 2010). "The first standard requires [that] the misconduct and unfaithfulness substantially violates the contract of service such that it permeates the employee's service in its most material and substantial part." Doe v. Solera Capital LLC, 18-CV-1769-ER, 2019 WL 1437520 (Mar. 31, 2019), vacated on other grounds, 2020 WL 11027792 (S.D.N.Y. Dec. 16, 2020) (internal quotation marks, alterations, and citations omitted). The second standard is less exacting, requiring only "misconduct . . . that rises to the level of a breach of a duty of loyalty or good faith." Phansalkar, 344 F.3d at 202. Here, the Court need not attempt to reconcile the two standards, as it finds that, under either standard, Plaintiffs are entitled to summary judgment dismissing the Counterclaim.

Courts in this circuit have generally found that minor misconduct does not constitute the type of "persistent pattern of disloyalty that courts have found necessary to bring conduct within the confines of the [faithless servant] doctrine." Doe, 2019 WL 1437520, at *10 (internal quotation marks omitted). "The duty of loyalty has been limited to cases where the employee, acting as the agent of the employer, unfairly competes with his employer, diverts business opportunities to himself or others to the financial detriment of the employer, or accepts improper kickbacks." Grewal v. Cuneo, No. 13-CV-6836-RA, 2016 WL 308803, at *7 (S.D.N.Y. Jan. 25, 2016) (quoting Farricker v. Penson Dev., Inc., No. 07-CV-11191-DAB, 2010 WL 845983, at *2 (S.D.N.Y. Mar. 4, 2010)) (internal quotation marks omitted); see also Doe, 2019 WL 1437520, at *10 (noting, while dismissing a faithless servant counterclaim stemming

from improper use of a firm's credit card totaling $224.20, that "the faithless servant doctrine doesn't apply on the facts of this case because Defendants have not cited, and the Court has not found, a case where the doctrine was applied to the type of garden-variety, petty pilfering by an employee as alleged here"); Torres v. Gristede's Operating Corp., 628 F. Supp. 2d 447 (S.D.N.Y. 2008) ("Nor can it be, as Gristede's apparently supposes, that every routine termination for sexual harassment or credit card fraud necessarily raises faithless servant claims."); cf. Salus Capital Partners, LLC v. Moser, 289 F. Supp. 3d 468, 481 (S.D.N.Y. 2018) (confirming arbitration award based on finding of faithless servant claim based upon "manipulation" of "roughly $100,000" in invoices); Sansum v. Fioratti, 128 A.D.3d 420, 421 (App. Div. 1st 2015) (granting summary judgment for employer against employee found to have embezzled $100,000 over a two year period).

  Here, Plaintiff Mirkov admits to altering tips from customers approximately twelve times over two years. (Defs. 56.1 St. ¶ 10.) Defendants do not allege a total dollar amount stolen. However, while Mirkov's misconduct is certainly improper, even considering this misconduct in the light most favorable to the Defendants, the Court concludes that it is, on the record before the Court, far more akin to the "petty pilfering" identified in Doe and Torres than to the large-scale fraud considered in Moser or Sansum. Defendants argue that "it is of no moment that Mirkov is a minimum wage employee because it is not a requirement for a claimant in a faithless servant action to show that the employee against whom the claim is brought attained a minimum income threshold." (Defs. Reply at 2.) Defendants' argument errs in focusing on the income of the employee rather than the scope of the misconduct. Regardless of the income or position of a given employee, "petty pilfering" of the type considered here has repeatedly been found insufficient to support a faithless servant claim.

For these reasons, the Court grants Plaintiffs' motion for summary judgment as to the Counterclaim. Defendants' summary judgment motion as to the Counterclaim is denied.[6]

CONCLUSION

For the foregoing reasons, Plaintiff's motion for summary judgment on Counts Five, Seven and Eight against the Restaurant only, and as to the Counterclaim, is granted. Defendants' motion for summary judgment is granted as to all claims arising under the FLSA prior to March 7, 2015, and is otherwise denied.

This Memorandum Opinion and Order resolves docket entry nos. 49 and 55. This case remains referred to Magistrate Judge Willis for general pretrial management. The parties must promptly contact Judge Willis' chambers to request a settlement conference and to address what, if any, pretrial matters remain outstanding if settlement of all outstanding issues cannot be achieved. The final pretrial conference is adjourned to **December 9, 2022, at 9:30 a.m.** The parties shall confer and make submissions in advance of the conference in accordance with the Pretrial Scheduling Order (docket entry no. 43).

SO ORDERED.

Dated: New York, New York
August 31, 2022

    /s/ Laura Taylor Swain
LAURA TAYLOR SWAIN
Chief United States District Judge

---

[6] As the Court has granted Plaintiffs' motion for summary judgment regarding the Counterclaim, the Court declines to address Plaintiffs' arguments as to whether the faithless servant doctrine is preempted by the FLSA.